646 P.2d 579

**Jane BARTLETT and Floyd Bartlett, her husband, Plaintiffs-Appellees,**

v.

**NEW MEXICO WELDING SUPPLY, INC., a New Mexico corporation, Defendant-Appellant.**

No. 5361.

Court of Appeals of New Mexico.

March 2, 1982.

Certiorari Denied June 17, 1982.

Lowell Stout, Stout & Stout, Hobbs, and Sarah M. Singleton, Singleton & Roberts-Hohl, Santa Fe, for defendant-appellant.

B. G. Davis, Dick A. Blenden, Paine, Blenden, Diamond & Davis, Carlsbad, for plaintiffs-appellees.

## OPINION

WOOD, Judge.

This comparative negligence case presents two issues: (1) whether a tortfeasor is liable for all of the damages caused by concurrent tortfeasors under a theory of joint and several liability; and (2) whether the percentage of fault of a non-party concurrent tortfeasor is to be determined by the fact finder.

The automobile accident involved three vehicles. The car in front of plaintiffs' car signaled a right hand turn. This lead car turned into and then pulled out of a service station in a very fast motion. Plaintiff Jane Bartlett slammed on her brakes to avoid hitting the lead car. Defendant's truck was behind plaintiffs' car. Defendant's driver applied his brakes; however, the truck skidded into the rear of plaintiffs' car.

The driver of the lead car is unknown. Plaintiffs sued defendant on a theory of negligence. Defendant contended that the negligence of the unknown driver "caused or contributed to cause" the accident and resulting damages.

The trial court instructed the jury:

If you find for the plaintiff but also find that the negligence of the plaintiff and/or the unknown third party contributed to cause the accident and resulting damages, then you must decide how much each party was at fault. The defendant is liable only for defendant's percentage of fault in causing the accident and any resulting damages and the total amount of damages to which plaintiff would otherwise be entitled shall be reduced in proportion to the percentage of plaintiff's negligence and/or the negligence of the unknown third party.

The jury answered "special questions." It determined that plaintiffs' damages were $100,000.00, that plaintiffs were not negligent, that defendant was negligent, that defendant's negligence contributed to the accident and plaintiffs' damages to the extent of 30%, that the unknown driver was negligent and this negligence contributed to the accident and plaintiffs' damages to the extent of 70%.

Plaintiffs moved that judgment be entered in their favor in the amount of $100,-000.00. This motion was not granted. Instead, the trial court ordered a new trial. The trial court was of the view that: (a) the above quoted instruction should not have been given; (b) that the case should not have been tried between plaintiffs, defendant, and the unknown driver; (c) that defendant is jointly and severally liable for the damages to plaintiffs caused by defendant and the unknown driver; and (d) "that a different result would have occurred had the jury known that this Defendant would have been responsible for the total damages under joint and several liability."

We granted defendant's application for an interlocutory appeal.

*Joint and Several Liability*

In this case, in using the term "joint and several liability," we mean that either of two persons whose concurrent negligence contributed to cause plaintiffs' injury and damage may be held liable for the entire amount of the damage caused by them. *See, Salazar v. Murphy,* 66 N.M. 25, 340 P.2d 1075 (1959); *Trefzer v. Stiles,* 56 N.M. 296, 243 P.2d 605 (1952). It is not disputed that this is a common law rule which existed in New Mexico prior to *Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981), which adopted the opinion of the Court of Appeals in *Claymore v. City of Albuquerque.* In *Claymore,* this Court adopted pure comparative negligence. *Claymore* is reported immediately following the Supreme Court opinion in *Scott* and without a separate citation. Our references to *Scott* and *Claymore* are to be found in the opinion reported under the above citation. It is not disputed that defendant and the unknown driver were concurrent tortfeasors.

The question is whether, in a comparative negligence case, a concurrent tortfeasor is liable for the entire damage caused by concurrent tortfeasors. In answering this question, we do not consider situations where one of the tortfeasors would not be subject to any liability; such situations might arise under either statutory or common law provisions. *See, Fitzgerald v. Valdez,* 77 N.M. 769, 427 P.2d 655 (1967); *Beal v. Southern Union Gas Company,* 62 N.M. 38, 304 P.2d 566 (1956); *Downing v. Dillard,* 55 N.M. 267, 232 P.2d 140 (1951); *Compare, City of Artesia v. Carter,* 94 N.M. 311, 610 P.2d 198 (Ct.App.1980); *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214 (Ct.App.1977). The premise for the question to be answered is that, under the common law rule, either the defendant or the unknown driver could be held liable for the damage caused by their combined negligence.

The question has been answered in several states; most of these decisions are not helpful because the answer depended upon the contents of a comparative negligence statute. As an example, compare *Fitzgerald v. Badger State Mut. Cas. Co.,* 67 Wis.2d 321, 227 N.W.2d 444 (1975), and *Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962), with *Stannard v. Harris,* 135 Vt. 544, 380 A.2d 101 (1977). *See also, Simonsen v. Barlo Plastics Co., Inc.,* 551 F.2d 469 (1st Cir. 1977). As to the variety in results reached, *see generally,* Schwartz, *Comparative Negligence,* ch. 16 on Multiple Parties.

*Claymore, supra,* footnote 11, cites four states which have adopted pure comparative negligence. Each of those states has considered whether joint and several liability should continue to apply. We examine their decisions.

(a) *Florida*

*Lincenberg v. Issen,* 318 So.2d 386 (Fla. 1975), held that the Uniform Contribution Among Joint Tortfeasors Act, enacted during the pendency of the appeal, "retains the full, joint, and several liability of joint tortfeasors to the plaintiff, and provides for contribution between" the joint tortfeasors. Such reasoning cannot be applied to the New Mexico statute.

The Commissioners' Prefatory Note to the 1955 revision of the Uniform Act, 12 Uniform Laws Annotated (Master ed. 1975), p. 59, points out that New Mexico adopted the Act in 1947, and that the Act applied to persons whose liability was established. The Act does not purport to determine whether a person is jointly and severally liable to a plaintiff. The prefatory note states: "This uniform act establishes the right of *a person liable for damages* for an unintentional wrong to compel *others, who are liable with him for the same damages,* to share in discharging the common liability. * * * This act would distribute the burden of responsibility equitably *among those who are jointly liable*[.]" (Our emphasis.)

■ Section 41–3–1, N.M.S.A.1978, defines joint tortfeasors to mean "persons jointly or severally liable in tort for the same injury"; Section 41–3–1 does not state *when* a person is jointly or severally liable. New Mexico's statute involves the relationship among joint tortfeasor defendants and not the relationship between de-

fendants and plaintiffs. *Commercial U. Assur. v. Western Farm Bur. Ins.*, 93 N.M. 507, 601 P.2d 1203 (1979). The goal of New Mexico's statute is equity among tortfeasors. *Aalco Mfg. Co. v. City of Espanola*, 95 N.M. 66, 618 P.2d 1230 (1980).

■ The issue is whether defendant, responsible for 30% of the damage, must pay 100% of the damage. The right to contribution between defendant and the unknown driver does not answer that issue.

### (b) *Michigan*

*Weeks v. Feltner*, 99 Mich.App. 392, 297 N.W.2d 678 (1980), held that the doctrine of comparative negligence did not mandate the abandonment of joint and several liability. Defendants contended "that comparative negligence requires that a defendant only be liable to the extent of his own wrongdoing, not only in relation to the plaintiff, but in relation to other defendants as well." The response, in *Weeks, supra*, was:

> This argument ignores the fact that the comparative negligence doctrine also seeks to assure fair and adequate compensation for injured plaintiffs. Unlike the concept of contributory negligence, it avoids unduly penalizing a plaintiff for his own fault. While some unfairness exists when one defendant is held liable for the fault of his codefendants, this is equally true of cases where the plaintiff is not at fault.

The *Weeks, supra*, decision, in favoring a plaintiff, seems to disregard statements in the Michigan opinion adopting comparative negligence, *Placek v. City of Sterling Heights*, 405 Mich. 638, 275 N.W.2d 511 (1979). Those statements are (1) that pure comparative negligence most nearly accomplishes the goal of a fair system of apportioning damages, and (2) "[w]hat pure comparative negligence does is hold a person fully responsible for his or her acts and to *the full extent to which they cause injury*. That is justice." (Our emphasis.) To hold a person liable for an amount greater than the extent that person caused injury is contrary to the statements in *Placek, supra*.

Discussing the Kansas comparative negligence statute, *Brown v. Keill*, 224 Kan. 195, 580 P.2d 867 (1978), states:

> The legislature intended to equate recovery and duty to pay to degree of fault. Of necessity, this involved a change of both the doctrine of contributory negligence and of joint and several liability. There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not. Previously, when the plaintiff had to be totally without negligence to recover and the defendants had to be merely negligent to incur an obligation to pay, an argument could be made which justified putting the burden of seeking contribution on the defendants. Such an argument is no longer compelling because of the purpose and intent behind the adoption of the comparative negligence statute.

The reasoning in *Placek, supra*, is consistent with the reasoning in *Brown, supra*. More is involved in pure comparative negligence than the removal of contributory negligence as a bar to recovery. *Weeks, supra*, is not persuasive because it departs from the concept on which pure comparative negligence is based—that fairness is achieved by basing liability on a person's fault.

### (c) *Alaska*

*Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426 (Alaska 1979), followed the Florida view, *Lincenberg v. Issen, supra*, that a statute providing for contribution among

joint tortfeasors showed a legislative intent that a plaintiff could collect his entire judgment from one concurrent tortfeasor, regardless of the extent of fault. We have pointed out that New Mexico's statute does not support this view.

*Arctic Structures, supra,* followed California in retaining joint and several liability. We discuss the California decision subsequently. *Arctic Structures, supra,* candidly stated: "In abandoning the rule of contributory negligence in favor of comparative negligence, this court was primarily concerned with the inequity of requiring an injured plaintiff to bear damages far in excess of his or her own measure of fault simply because the plaintiff was less than completely free of negligence." Thus, Alaska, as Michigan in *Weeks v. Feltner, supra,* was not concerned with fairness among all participants in the injury-causing event; rather, its concern was to make things more favorable to a plaintiff.

### (d) *California*

California adopted pure comparative negligence in *Li v. Yellow Cab Company of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975). A California Court of Appeal, in *Am. Motorcycle Ass'n v. Super. Ct., Etc.,* 65 Cal.App.3d 694, 135 Cal.Rptr. 497 (1977), held:

> [T]he adoption of the rule of pure comparative negligence in *Li* abrogates the preexisting rule of joint and several liability of concurrent tortfeasors. Where the *Li* rule applies liability among concurrent tortfeasors must be apportioned according to their respective degrees of negligence with each liable to the plaintiff only for his proportion.

The California Supreme Court, in *American Motorcycle Ass'n v. Superior Court,* 20 Cal.3d 578, 146 Cal.Rptr. 182, 578 P.2d 899 (1978), reversed the Court of Appeal's decision and retained joint and several liability. Oklahoma, in *Laubach v. Morgan,* 588 P.2d 1071 (Okl.1978), considered both California decisions and found the rationale of the Court of Appeal's decision to be "very persuasive." We agree with Oklahoma's appraisal.

Adams, "Settlements After *Li:* But is it 'Fair'?", 10 Pac. L.J. 729 (1979), at pp. 739–740, states:

> The California Supreme Court gave three reasons for the retention of joint and several liability. First, it was noted that the ability of a court to apportion fault on a comparative fault basis does not make an "indivisible injury 'divisible' for purposes of the joint and several liability rule." Second, it was observed that while a plaintiff may be partially at fault for his or her own injury, the plaintiff's conduct is not the same as that of the defendant since the plaintiff's negligence consists of a failure to use due care to protect himself or herself while the negligence of the defendant relates to a failure to use due care to protect others. The third basis * * * was a pragmatic policy determination that joint and several liability must be retained to allow an injured plaintiff to receive adequate compensation for his or her injuries. * * * Thus, the notion of *Li* that each tortfeasor should bear his or her fair proportion of the loss was overridden by the fear that a plaintiff may not be able to collect all the damages awarded.

*Li, supra,* stated: "[T]hat logic, practical experience, and fundamental justice" required that the doctrine of contributory negligence "be replaced * * * by a system under which liability for damage will be borne by those whose negligence caused it *in direct proportion to their respective fault.*" (Our emphasis.) *Li, supra,* adopted "pure" comparative negligence, and stated that the " 'pure' form of comparative negligence, apportions *liability in direct proportion to fault in all cases.*" (Our emphasis.) *Li, supra,* observed that in a system in which liability is based on fault, the "primal concept that * * * the extent of fault should govern the extent of liability—remains irresistible to reason and all intelligent notions of fairness."

The reasons given by the California Supreme Court in the *American Motorcycle Ass'n, supra,* case are answered by the lan-

guage of *Li, supra*. After *American Motorcycle Ass'n, supra*, the California view is that comparative negligence is to be applied between a plaintiff and a single defendant, and among joint tortfeasors, but is not to be applied between a plaintiff and multiple defendants.

The foregoing discussion shows that joint and several liability, for concurrent tortfeasors, has been retained by judicial decision in pure comparative negligence states. We recognize that this retention accords with 2 Restatement of Torts, Second (1965), § 433A. *See*, Comment h to § 433A. Retention also accords with the Uniform Comparative Fault Act, § 2. This proposed uniform act appears in 12 ULA, *supra*, (1981 pocket supp.).

The retention of joint and several liability ultimately rests on two grounds; neither ground is defensible.

The first ground is the concept that a plaintiff's injury is "indivisible." The California Supreme Court, in *American Motorcycle Ass'n, supra*, followed this ground when it stated:

> [T]he simple feasibility of apportioning fault on a comparative negligence basis does not render an indivisible injury "divisible" for purposes of the joint and several liability. * * * In other words, the mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury.

Thus, under the California Supreme Court decision, a concurrent tortfeasor, 1% at fault, is liable for 100% of the damage caused by concurrent tortfeasors, on the basis that the tortfeasor, 1% at fault, caused the entire damage. A practical answer, in this case, is that the jury found that defendant was 30% at fault and caused 30% of the damage.

Prosser, *Law of Torts*, 4th Edition, § 41, p. 241, states: "The law of joint tortfeasors rests very largely upon recognition of the fact that each of two or more causes may be charged with a single result."

Prosser, "Joint Torts and Several Liability," 25 Cal.L.Rev. 413 (1936–37), states that the rule holding a concurrent tortfeasor for the entire loss "grew out of the common law concept of the unity of the cause of action; the jury could not be permitted to apportion the damages, since there was but one wrong." The "unity" concept, in turn was based on common law rules of pleading and joinder. Prosser, *Law of Torts, supra*, ch. 8. The article "Torts—Liability of Joint Tort-Feasors—Apportionment of Damages Between Joint Tort-Feasors by Verdict of Jury," 14 Va.L.Rev. 677 (1927–28), at p. 680–81, states that the cases which retain joint and several liability under relaxed American rules of joinder and in cases where causes of injury are concurrent, rather than concerted:

> seem to consider the question, not from the standpoint of whether it is just and reasonable to hold a person liable for all the damages occasioned by a joint tort in which his individual part may have resulted in little or no damage, but rather from the viewpoint of the unity of a cause in the old technical common law sense. That as the tortfeasors committed the tort together, and a single writ was brought against them, and they were sued in a single action and found guilty, then the damages should be rendered in a single sum. For, as the action was a unit and all found guilty of the same wrong, they must be equally guilty of the same amount of wrong * * *. But with the broadening in modern times of the legal conceptions regarding real consistency in the law as distinguished from mere technicality, the reasoning which appeared so persuasive to the old English jurists has lost much, if not all, of its force.

The article states that the doctrine "cannot be said to be based on any sound reason." "The few attempts by American authorities to justify the rule on reason cannot be said to be absolutely satisfactory."

The California Court of Appeal stated in *American Motorcycle Ass'n, supra*: "*Li* [where pure comparative negligence was

adopted] accepts the ability of the fact finding process to apportion degrees of negligence. In so doing, it eliminates the previously assumed inability to apportion fault among tortfeasors as the foundation of joint and several liability." We are unwilling, as was the California Supreme Court, to say that although fault may be apportioned, causation cannot. If the jury can do one, it can do the other. *See*, 14 Va.L.Rev., *supra*, p. 682.

Joint and several liability is not to be retained in our pure comparative negligence system on a theory of one indivisible wrong. The concept of one indivisible wrong, based on common law technicalities, is obsolete, and is not to be applied in comparative negligence cases in New Mexico. *See, Scott v. Rizzo, supra.*

The second ground is that joint and several liability must be retained in order to favor plaintiffs; a plaintiff should not bear the risk of being unable to collect his judgment. We fail to understand the argument. Between one plaintiff and one defendant, the plaintiff bears the risk of the defendant being insolvent; on what basis does the risk shift if there are two defendants, and one is insolvent? In our case, the risk factor arises because the concurrent tortfeasor, 70% at fault, is unknown.

We agree with Adler, "Allocation of Responsibility After *American Motorcycle Association v. Superior Court*," 6 Pepperdine L.Rev. 1 (1978), when, in reference to the California Supreme Court decisions, it states:

> In this final quarter of the twentieth century, it seems startling to find that plaintiffs, as a class, have a greater claim upon the court's sympathy than defendants. In contrast, the court in *Li* had mandated that each person's allocable responsibility for an incident would be determined by the finder of fact, whether that tortfeasor is labeled a "plaintiff" or a "defendant."

> Participants in an accident contribute to its occurrence in various ways. The consequences of their negligence intertwine. Their moral blameworthiness as actors in the drama, however, is not predicated upon their respective roles in subsequent litigation as "plaintiffs" or "defendants." Irrespective of the amount of injury, the first to sue becomes "the plaintiff." Those initially hailed into the action are called "defendants." Frequently, a "defendant" becomes a "plaintiff" by way of cross-complaint. The fact-finding process by jury use of a special verdict or interrogatory to allocate responsibility strips the judicial process to its foundation—the transfer of money from one person caused by *his wrongdoing* to pay for the loss *he has caused* another. Before and after *Li*, a plaintiff injured by an insolvent defendant could recover nothing regardless of the latter's blameworthiness. That fundamental reality has not been changed by either *Li* or *American Motorcycle.* Similarly, the respective *blameworthiness* of two (or more) defendants concurrently causing an accident is unchanged by *Li* and *American Motorcycle.* The supreme court, in simultaneously approving a joint and several verdict and the allocation procedure, has indicated that it will predicate liability for a defendant upon the solvency of his co-defendant, not upon blameworthiness.

That the judicial system could sanction such a result in certain cases prior to *Li* was due to a lack of proper basic principles and an inadequate procedure. Prior to *Li*, the courts would not allocate responsibility between defendants; moreover, the doctrine of contributory negligence cast a moral stone against the "guilty" tortfeasor by the completely "innocent" plaintiff. Today there is no such justification for laying the entire burden of an accident caused by one tortfeasor labelled as "defendant," whether or not served, upon another "defendant." Fairness dictates that the blameworthiness of all actors in an incident be treated on a consistent basis.

*Claymore, supra*, states:

Our purpose is to emphasize that if negligence or negligence-related concepts are

a basis for liability, the comparative negligence doctrine applies, and common sense will assist in its fair application.

The thrust of the comparative negligence doctrine is to accomplish (1) apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury, and (2) apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party. * * * In multiple party cases, interrogatories will address the question of liability between each plaintiff and each defendant, to reflect such apportionment.

* * * * * *

Pure comparative negligence denies recovery for one's own fault; it permits recovery to the extent of another's fault; and it holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm.

*Scott v. Rizzo, supra,* adopted *Claymore, supra,* which states damages are to be apportioned on the basis of fault.

Joint and several liability is not to be retained in our pure comparative negligence system on the basis that a plaintiff must be favored.

We hold that defendant is not liable for the entire damage caused by defendant and the unknown driver. Defendant, as a concurrent tortfeasor, is not liable on a theory of joint and several liability.

*Non-Party Concurrent Tortfeasor*

■ Heft and Heft, *Comparative Negligence Manual* (1978), § 8.131, states:

It is accepted practice to include all tortfeasors in the apportionment question. This includes nonparties who may be unknown tortfeasors, phantom drivers, and persons alleged to be negligent but not liable in damages to the injured party such as in the third party cases arising in the workmen's compensation area.

*See,* Hensley, "Multiple Party Litigation in Comparative Negligence: Incomplete Resolution of Joinder and Settlement Problems," 32 Sw.L.J. 669 (1978), at p. 679.

*Brown v. Keill, supra,* stated in connection with the Kansas statute that:

[T]he intent and purpose of the legislature * * * was to impose individual liability for damages based on the proportionate fault of all parties to the occurrence which gave rise to the injuries and damages even though one or more parties cannot be joined formally as a litigant or be held legally responsible for his or her proportionate fault.

*Claymore, supra,* had the same intent and purpose.

"The jury must ascertain the percentage of negligence of all participants to an occurrence." *Bd. of Cty. Com'rs of Cty., Etc. v. Ridenour,* 623 P.2d 1174 (Wyo.1981). *See also, Bowman v. Barnes,* 282 S.E.2d 613 (W.Va.1981).

The trial court properly instructed the jury to consider the negligence and damage resulting from the negligence of the unknown driver.

The order granting a new trial is reversed. The cause is remanded with instructions to enter judgment in favor of plaintiffs, against defendant, for the 30% of plaintiffs' damages caused by defendant.

IT IS SO ORDERED.

WALTERS, C. J., and LOPEZ, J., concur.