515 So.2d 198 (1987)
WALT DISNEY WORLD CO., et al., Petitioners,
v.
Aloysia WOOD, et al., Respondents.
No. 68647.
Supreme Court of Florida.
November 5, 1987.
John L. O'Donnell, Jr., Thomas B. DeWolf and John H. Ward of DeWolf, Ward *199 & Morris, P.A., Orlando, and Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villereal and Banker, Tampa, for petitioners.
Sheldon J. Schlesinger, P.A., Fort Lauderdale, and Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, for respondents.
Marjorie Gadarian Graham of Jones & Foster, P.A., West Palm Beach, amicus curiae for Florida Defense Lawyers' Ass'n.
DuBose Ausley, William M. Smith and Timothy B. Elliott of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, amicus curiae for The Florida R.R. Ass'n.
C. Rufus Pennington, III of Margol, Fryefield & Pennington, Jacksonville, amicus curiae for The Academy of Florida Trial Lawyers.
Joseph W. Little, Gainesville, amicus curiae.
GRIMES, Justice.
The Fourth District Court of Appeal has certified the following question as one of great public importance:
DOES THE HOLDING IN LINCENBERG v. ISSEN DICTATE AN AFFIRMANCE OF THE TRIAL COURT'S DECISION IN THIS CASE?
Walt Disney World Co. v. Wood, 489 So.2d 61, 63 (Fla. 4th DCA 1986). We have jurisdiction pursuant to article V, section 3(b)(4), Florida Constitution.
Aloysia Wood was injured in November 1971 at the grand prix attraction at Walt Disney World (Disney), when her fiance,[1] Daniel Wood, rammed from the rear the vehicle which she was driving. Aloysia Wood filed suit against Disney, and Disney sought contribution from Daniel Wood.[2] After trial, the jury returned a verdict finding Aloysia Wood 14% at fault, Daniel Wood 85% at fault, and Disney 1% at fault. The jury assessed Wood's damages at $75,000. The court entered judgment against Disney for 86% of the damages. Disney subsequently moved to alter the judgment to reflect the jury's finding that Disney was only 1% at fault. The court denied the motion. On appeal, the fourth district affirmed the judgment on the basis of this Court's decision in Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975).
In Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), this Court discarded the rule of contributory negligence, which Florida had followed since at least 1886, and adopted the pure comparative negligence standard. See Smith v. Department of Insurance, 507 So.2d 1080 (Fla. 1987) (tracing the evolution of contributory and comparative negligence); Louisville & N.R.R. v. Yniestra, 21 Fla. 700 (1886) (establishing contributory negligence on the part of a prospective plaintiff as a bar to any recovery against a defendant). In adopting comparative negligence, this Court expressly declared two purposes for the change in judicial policy:
(1) To allow a jury to apportion fault as it sees fit between negligent parties whose negligence was part of the legal and proximate cause of any loss or injury; and
(2) To apportion the total damages resulting from the loss or injury according to the proportionate fault of each party.
Hoffman, 280 So.2d at 439.
Thereafter, in Lincenberg v. Issen, a faultless plaintiff obtained a verdict in which the jury determined that one defendant was 85% percent negligent and the other defendant was 15% negligent. The district court of appeal held that the jury should not have been asked to apportion fault between the defendants. Issen v. Lincenberg, 293 So.2d 777 (Fla. 3d DCA 1974). On review, this Court concluded that the rationale of Hoffman v. Jones dictated the elimination of the rule against contribution among joint tortfeasors. The Court then said that since "`no contribution' *200 is no longer a viable principle in Florida, we were confronted with the problem of determining what procedure will most fully effectuate the principle that each party should pay the proportion of the total damages he has caused to the other party, and we considered several alternatives." Lincenberg, 318 So.2d at 392 (footnote omitted). At this point, the Court stated in footnote 2 that among the alternatives considered was pure apportionment whereby the plaintiff may recover judgment against codefendants only for the percentage of damages caused by the negligence of each individual defendant. However, the Court noted that the legislature had just passed section 768.31, Florida Statutes (1975), which provided for contribution among joint tortfeasors and interpreted the statute as retaining the "full, joint, and several liability of joint tortfeasors to the plaintiff." Thus, the Court held:
The plaintiff is entitled to a measurement of his full damages and the liability for these damages should be apportioned in accordance with the percentage of negligence as it relates to the total of all the defendants. The negligence attributed to the defendants will then be apportioned on a pro rata basis without considering relative degrees of fault although the multiparty defendants will remain jointly and severally liable for the entire amount.
Lincenberg, 318 So.2d at 393-94.
While arising in the context of a faultless plaintiff, it cannot reasonably be said that the Court in Lincenberg did not pass on the question now before us. Understandably, courts addressing the issue in subsequent decisions, including this Court, have interpreted Lincenberg as upholding the doctrine of joint and several liability. Borden, Inc. v. Florida E. Coast Ry., 772 F.2d 750 (11th Cir.1985); Woods v. Withrow, 413 So.2d 1179 (Fla. 1982); Department of Transportation v. Webb, 409 So.2d 1061 (Fla. 1st DCA 1981), review denied, 419 So.2d 1200 (Fla. 1982); Metropolitan Dade County v. Asusta, 359 So.2d 58 (Fla. 3d DCA 1978); Moore v. St. Cloud Utilities, 337 So.2d 982 (Fla. 4th DCA), cert. denied, 337 So.2d 809 (Fla. 1976). Therefore, the certified question, as worded, must be answered in the affirmative.
The real issue before us is whether we should now replace the doctrine of joint and several liability with one in which the liability of codefendants to the plaintiff is apportioned according to each defendant's respective fault. According to Disney, this Court in Hoffman set for itself the goal of creating a tort system that fairly and equitably allocated damages according to the degrees of fault. Therefore, a defendant should only be held responsible to the extent of his fault in the same way as a plaintiff under comparative negligence.
Joint and several liability is a judicially created doctrine. Louisville & N.R.R. v. Allen, 67 Fla. 257, 65 So. 8 (1914). This Court may alter a rule of law where great social upheaval dictates its necessity. Hoffman, 280 So.2d 435. The "social upheaval" which is said to have occurred here is the fundamental alteration of Florida tort law encompassed by the adoption of comparative negligence.[3] Following the adoption of comparative negligence, some states have passed laws eliminating joint and several liability,[4] and the courts of several others have judicially abolished the doctrine. E.g., Brown v. Keill, 224 Kan. 195, 580 P.2d 867 (1978); Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, *201 646 P.2d 579 (Ct.App.), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982); Laubach v. Morgan, 588 P.2d 1071 (Okla. 1978). The Kansas Supreme Court in Brown v. Keill reasoned:
There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not.
Brown, 224 Kan. at 203, 580 P.2d at 874.
On the other hand, the majority of courts which have faced the issue in jurisdictions with comparative negligence have ruled that joint and several liability should be retained. E.g., Arctic Structures, Inc. v. Wedmore, 605 P.2d 426 (Alaska 1979); American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578, 578 P.2d 899, 146 Cal. Rptr. 182 (1978); Tucker v. Union Oil Co., 100 Idaho 590, 603 P.2d 156 (1979); Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983); Kirby Bldg. Sys. v. Mineral Explorations, 704 P.2d 1266 (Wyo. 1985). The Illinois Supreme Court in Coney v. J.L.G. Industries, Inc. gave four reasons justifying the retention of joint and several liability:
(1) The feasibility of apportioning fault on a comparative basis does not render an indivisible injury "divisible" for purposes of the joint and several liability rule. A concurrent tortfeasor is liable for the whole of an indivisible injury when his negligence is a proximate cause of that damage. In many instances, the negligence of a concurrent tortfeasor may be sufficient by itself to cause the entire loss. The mere fact that it may be possible to assign some percentage figure to the relative culpability of one negligent defendant as compared to another does not in any way suggest that each defendant's negligence is not a proximate cause of the entire indivisible injury.
(2) In those instances where the plaintiff is not guilty of negligence, he would be forced to bear a portion of the loss should one of the tortfeasors prove financially unable to satisfy his share of the damages.
(3) Even in cases where a plaintiff is partially at fault, his culpability is not equivalent to that of a defendant. The plaintiff's negligence relates only to a lack of due care for his own safety while the defendant's negligence relates to a lack of due care for the safety of others; the latter is tortious, but the former is not.
(4) Elimination of joint and several liability would work a serious and unwarranted deleterious effect on the ability of an injured plaintiff to obtain adequate compensation for his injuries.
Coney, 97 Ill.2d at 121-22, 73 Ill.Dec. at 345, 454 N.E.2d at 205 (citations omitted).
The desirability of abolishing joint and several liability in Florida has also been debated for years both in and out of the legislative halls. See Note, Modification of the Doctrine of Joint and Several Liability: Who Bears the Risk?, 11 Nova L.J. 165 (Fall 1986). In 1986 the legislature substantially modified the doctrine of joint and several liability as part of its comprehensive tort reform law. § 768.81, Fla. Stat. (Supp. 1986). The fact that the new statute did not entirely abolish the doctrine but provided for apportionment of fault only under certain circumstances further indicates the complexity of the problem and suggests there may be no one resolution of the issue which will satisfy the competing interests involved.[5]
*202 While recognizing the logic in Disney's position, we cannot say with certainty that joint and several liability is an unjust doctrine or that it should necessarily be eliminated upon the adoption of comparative negligence. In view of the public policy considerations bearing on the issue, this Court believes that the viability of the doctrine is a matter which should best be decided by the legislature. Consequently, we approve the decision of the district court of appeal.
It is so ordered.
EHRLICH, BARKETT and KOGAN, JJ., concur.
McDONALD, C.J., dissents with an opinion, in which OVERTON and SHAW, JJ., concur.
OVERTON, J., dissents with an opinion.
McDONALD, Chief Justice, dissenting.
The majority opinion may make social sense, but it defies legal logic. The doctrines of joint and several liability and contributory negligence are consistent with each other. Each tortfeasor, as a part of the whole, is liable for the whole. Comparative negligence, which does not bar, but reduces a recovery to the extent of individual fault, requires a separation of fault between the injured party and the other tortfeasors. It would be a mismatch of legal concepts to have a separation theory for the plaintiffs and a joint liability responsibility for defendants. Comparative negligence recognized the ability of a court to determine and apportion damages in relation to the harm caused. Joint and several, in contrast, presumes the inability of the judiciary to divide fault among parties. We have now said that we can. Accordingly, when the comparative negligence doctrine comes into play, as it did in this case, the law of joint and several liability should be repudiated and each defendant held accountable for only the percentage of damages found by the trier of fact to have been caused by his conduct.
In Hoffman v. Jones, 280 So.2d 431 (Fla. 1973), we said "[w]hatever may have been the historical justification for it, today it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss." Id. at 436. In furtherance of the principles set forth in Hoffman, this Court, recognizing the enactment of section 768.31, Florida Statutes (1975), removed the common law bar against contribution between joint tortfeasors in Lincenberg v. Issen, 318 So.2d 386 (Fla. 1975). In doing so, we recognized that the equitable apportionment principle espoused in Hoffman should have broader application than permitting a plaintiff recovery for damages if he was partially at fault. As we concluded in Lincenberg, "it would be undesirable for this Court to retain a rule that under a system based on fault, casts the entire burden of a loss for which several may be responsible upon only one of those at fault." 318 So.2d at 391. Instead, "[w]hen the negligence of more than one person contributes to the occurrence of an accident, each person should pay the proportion of the total damages he has caused the other party." Id. at 389 (quoting Hoffman, 280 So.2d at 437). I believe these principles, which in Lincenberg we discussed in the context of contribution, are equally applicable to the concept of joint and several liability.
Although the district court in the case at bar relied on Lincenberg for the proposition that multiparty defendants remain jointly and severally liable under Florida's comparative negligence system, this reliance was misplaced. Lincenberg dealt solely with the question of whether contribution should be allowed under Florida's new comparative negligence system. The plaintiff in Lincenberg was faultless. The opinion never squarely addressed the issue of whether joint and several liability was consistent with Florida's new system of comparative negligence. Although some reference was made in dicta concerning the effect of section 768.31, Florida Statutes (1975), those statements were never intended *203 to mean that section 768.31 codified joint and several liability.
Section 768.31 adopted the Uniform Contribution Among Tortfeasors Act, which sets out the scheme governing the allocation and the limits of a joint tortfeasor's contribution rights.[1] A literal reading of this statute makes it clear that only when joint and several liability is found will the statute apply. § 768.31(2)(a). The statute in no way purports to determine when persons become jointly and severally liable. I find support for this interpretation of the statute both in the plain language of the act itself and in the interpretation given to the uniform act by at least one of our sister states that has addressed the identical question. See Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 154, 646 P.2d 579, 581 (Ct.App.) (act does not purport to determine whether a person is jointly or severally liable to a plaintiff), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982), affirmed sub nom., Taylor v. Delgarno Transportation, Inc., 100 N.M. 138, 667 P.2d 445 (1983). See also § 768.31(6), Fla. Stat. (1985) ("This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that enact it."); Uniform Contribution Among Tortfeasors Act, Commissioner's Prefatory Note (1955 revision), 12 U.L.A. 59 (1975) (act distributes burden among those whose joint liability has been established); Note, Contribution Act Construed  Should Joint and Several Liability Have Been Considered First?, 30 U. Miami L.Rev. 747, 756-57 (1976).
I do agree that, despite the fact that Lincenberg does not represent a definitive statement from this Court concerning the continuing viability of joint and several liability in Florida, Florida's courts have consistently applied the doctrine up to the present time. See, e.g., Woods v. Withrow, 413 So.2d 1179, 1182 n. 3 (Fla. 1982) (doctrine of joint and several liability fully retained); Department of Transportation v. Webb, 409 So.2d 1061, 1063 (Fla. 1st DCA 1981) (joint and several liability applies despite adoption of comparative negligence), review denied, 419 So.2d 1200 (Fla. 1982), approved as modified, 438 So.2d 780 (Fla. 1983). None of these cases involved a situation where the plaintiff's fault exceeded that of the targeted joint tortfeasor.
Section 768.31 does not prevent a change in the doctrine of joint and several liability or when it is to be applied. Moreover, I find no other statutory enactment preventing this Court from reconsidering the application of the doctrine to causes of action arising prior to July 1, 1986. Although I recognize that section 768.81, Florida Statutes (Supp. 1986), controls the fate of joint and several liability for causes of action arising after July 1, 1986, this statute is expressly inapplicable to causes of action, such as the instant case, that arose prior to that date.[2]
*204 All but six states have now made the switch from contributory to comparative negligence.[3] Of the states that have made this fundamental change, the majority have grappled directly with the viability of joint and several liability under their comparative negligence schemes. I acknowledge from the outset that these states have reached a variety of results.[4] Nevertheless, a survey of the relevant case law from across the nation reveals that those courts that have ruled in favor of retaining joint and several liability following the adoption of comparative negligence have rested their decisions on two fundamental grounds, neither of which I find defensible under Florida's modern tort scheme.
The first ground is the concept that a plaintiff's injury is indivisible. E.g., Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 121-22, 73 Ill.Dec. 337, 345, 454 N.E.2d 197, 205 (1983); American Motorcycle Association v. Superior Court, 20 Cal.3d 578, 588, 578 P.2d 899, 905, 146 Cal. Rptr. 182, 188 (1978). This idea arises from the ancient common law theory that the plaintiff's loss grew out of one united cause of action in which the act of one defendant was considered the act of all and that the jury could not apportion damages because there was only one wrong. Smith v. Department of Insurance, 507 So.2d 1080, 1091 (Fla. 1987); Bartlett, 98 N.M. at 157, 646 P.2d at 584; Prosser, Joint Torts and Several Liability, 25 Cal.L.Rev. 413 (1936-37). This unity concept apparently arose from common law realities concerning rules of pleading and joinder. Bartlett, 98 N.M. at 157, 646 P.2d at 584. Under this theory, a concurrent tortfeasor who, like Disney, is one percent at fault is liable for 100 percent of the damages caused by all concurrent tortfeasors based on the idea that each tortfeasor caused the plaintiff's entire loss. This result was palatable under Florida law as it existed prior to Hoffman because contributory negligence guaranteed fault-free plaintiffs, the law barred contribution among tortfeasors, and courts did not allocate fault among the various parties. Due to the considerable obstacles confronting a potential plaintiff under such a system, the law compensated *205 a legally "pure" plaintiff for these inherent inequities by allowing him to collect his entire judgment from any defendant guilty of even slight negligence. Laubach v. Morgan, 588 P.2d 1071, 1074 (Okla. 1978).
On the other hand, this justification breaks down under Florida's present system. Under pure comparative negligence, even a plaintiff who is ninety-nine percent at fault can bring suit. Thus, the need to compensate necessarily pure plaintiffs for the inherent inequities in the tort system no longer exists. Moreover, pursuant to our decision in Lawrence v. Florida East Coast Railway Co., 346 So.2d 1012 (Fla. 1977), juries routinely allocate fault in every comparative negligence case. The inability to apportion fault, assumed under common law, has been specifically eliminated. It would be an illogical fiction to say that, although fault may be apportioned, causation cannot. Bartlett, 98 N.M. at 158, 646 P.2d at 585. Therefore, the indivisible wrong theory, founded on common law technicalities, is obsolete under pure comparative negligence. Where the reasons for a common law rule no longer exist, the rule should be discarded. Sparks v. State, 273 So.2d 74 (Fla. 1973).
The second justification cited for retaining joint and several liability is that the doctrine is needed in order to insure that plaintiffs do not bear the risk of being unable to collect their judgments. E.g., Coney, 97 Ill.2d at 122-23, 73 Ill.Dec. at 345, 454 N.E.2d at 205; Rozevink v. Faris, 342 N.W.2d 845, 850 (Iowa 1983); Weeks v. Feltner, 99 Mich. App. 392, 395, 297 N.W.2d 678, 680 (1980); Arctic Structures, Inc. v. Wedmore, 605 P.2d 426, 434-35 (Alaska 1979); American Motorcycle Association, 20 Cal.3d at 589-90, 578 P.2d at 905-06, 146 Cal. Rptr. 188-89. I see little validity in this argument either. Between one plaintiff and one defendant, the plaintiff necessarily bears the risk of the defendant being insolvent. I fail to see the justice in shifting the risk simply because there are two defendants, one of whom is solvent or otherwise subject to suit. See Bartlett, 98 N.M. at 158, 646 P.2d at 585. As one of our sister courts has cogently noted:
There is nothing inherently fair about a defendant who is 10% at fault paying 100% of the loss, and there is no social policy that should compel defendants to pay more than their fair share of the loss. Plaintiffs now take the parties as they find them. If one of the parties at fault happens to be a spouse or a governmental agency and if by reason of some competing social policy the plaintiff cannot receive payment for his injuries from the spouse or agency, there is no compelling social policy which requires the codefendant to pay more than his fair share of the loss. The same is true if one of the defendants is wealthy and the other is not.
Brown v. Keill, 224 Kan. 195, 203, 580 P.2d 867, 874 (1978). I agree. I see no justification for compelling Disney to pay 100 percent of the damage award simply because Mrs. Wood chose to marry the other tortfeasor, an individual whom the jury found to be eighty-five times more at fault than Disney.
Moreover, the familiar axiom that, because it happens to be a solvent business entity, a defendant is necessarily better able to spread the loss than the plaintiff is not true in every case. After all, not every defendant is General Motors or Disney. The doctrine of joint and several liability applies equally to all defendants, whether they be large corporations, small independent businesses, or individuals. In the case of a small business, the net result of a damage award entered pursuant to joint and several liability can be to crush the business financially regardless of whether the company bore a significant degree of fault for the plaintiff's injury. No social policy can sanction such a result.
Participants in an accident contribute to its occurrence in many ways and the consequences of their negligence intertwine. Their blameworthiness, be it moral or legal, is not predicated upon their respective roles as plaintiffs or defendants in subsequent litigation. If we are ever to achieve a just and equitable tort system, we must predicate a party's liability upon his or her blameworthiness, not upon his or her solvency or a codefendant's susceptibility to *206 suit. Bartlett, 98 N.M. at 158, 646 P.2d at 585. Those who argue for favoring the plaintiff merely because he or she is the plaintiff have lost sight of the paramount goal of comparative negligence.
By adopting pure comparative negligence in Hoffman, this Court set for itself the goal of creating a tort system that fairly and equitably allocates damages. 280 So.2d at 438. See Placek v. City of Sterling Heights, 405 Mich. 638, 660-61, 275 N.W.2d 511, 519-20 (1979) (pure comparative negligence most nearly accomplishes the fair and equitable allocation of damages). Basing a defendant's liability upon the ability of others to pay runs counter to Hoffman's pronouncement that the liability of the defendant should not depend upon what damages were suffered, but upon what damages the defendant caused. 280 So.2d at 439. Therefore, I would hold that when a plaintiff is partially at fault the doctrine of joint and several liability is abrogated in Florida in favor of a rule that each defendant is liable only for an amount which is equivalent to the total damages multiplied by the percentage of fault by that defendant. For those accidents to which section 768.71, Florida Statutes (Supp. 1986), applies, this ruling would be modified to conform to the statute.
OVERTON and SHAW, JJ., concur.
OVERTON, Justice, dissenting.
I fully concur with Chief Justice McDonald's dissenting opinion.
To say it is proper for this Court to change the contributory negligence doctrine to comparative negligence by court decision, and then say the judicially established companion doctrine of joint and several liability should be left to the legislature, is both an abdication of our responsibility to address judicially established legal principles and, in this instance, hypocritical.
Our tort system is founded on the principle of fault, with the one whose fault caused injury being liable for the damages he or she caused. In this instance, the tortfeasor that caused only one percent of the injury is required to pay eighty-six percent of the damages. The majority opinion appears to convey the impression that a majority of jurisdictions would allow this type of recovery. That is a false impression. The large majority of jurisdictions recognize the injustice of a rule that would allow a recovery in this circumstance. The majority of jurisdictions which have adopted comparative negligence allow a plaintiff to recover from a defendant on the basis of joint and several liability only if the defendant's negligence is greater than the plaintiff's negligence or if the defendant is at least fifty percent negligent. Joint and several liability, as it is applied to the instant case, is a judicially established rule. As such, it is our responsibility to address it in a manner that will establish sound logical justice for all parties. In my view that can best be achieved by at least eliminating joint and several liability for defendants whose negligence is less than that of the plaintiff.
NOTES
[1] Wood married her fiance prior to this action.
[2] The petitioners in this case are Disney and its insurer, Insurance Company of North America. For purposes of this opinion, both parties shall be referred to as Disney.
[3] One weakness in this argument is that the social upheaval, if it occurred, took place in Hoffman v. Jones, which predated Lincenberg. The subsequent amendment to section 768.31 in which contribution was changed from a pro rata to a percentage basis, by itself, could hardly be deemed to have such momentous consequences. Therefore, in order to abolish joint and several liability, this Court would also have to overrule Lincenberg, in which the drastic changes wrought by Hoffman v. Jones were affirmatively considered.
[4] Some statutes limit the judgment entered against each defendant to that defendant's percentage of the plaintiff's damages. E.g. Ohio Rev. Code Ann. § 2315.19(A) (Baldwin 1984); N.H. Rev. Stat. Ann. § 507:7-d (1986 Supp.). Others only limit the defendant's liability to the percentage of his negligence when his negligence is less than that of the plaintiff's. E.g. Or. Rev. Stat. § 18.485 (1985); Tex.Civ.Prac. & Rem. Code Ann. § 33.001(b) (Vernon 1986).
[5] We note that the same legislation included the creation of an Academic Task Force to study and make recommendations to the legislature concerning all aspects of tort and insurance law.
[1] At the time this Court decided Lincenberg, § 768.31 mandated that contribution shares had to be allocated on a pro rata basis without consideration of the parties' relative degrees of fault. § 768.31(3)(a), Fla. Stat. (1975). Therefore, at that time, the uniform act was clearly inconsistent with Hoffman and the equation of liability with fault. In 1976, however, the legislature amended the statute to conform more closely with the theoretical underpinnings of Hoffman. Ch. 76-186, § 1, Laws of Fla. The statute now provides that contribution is to be based on relative degrees of fault. § 768.31(3)(a), Fla. Stat. (1985). Because the instant cause of action arose in 1971, however, this amendment is inapplicable to the instant case.
[2] § 768.81 Fla. Stat. (Supp. 1986), provides in pertinent part:

(3) APPORTIONMENT OF DAMAGES.  In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
(4) APPLICABILITY. 
(a) This section applies to negligence cases. For purposes of this section, "negligence cases" includes, but is not limited to, civil actions for damages based upon theories of negligence, strict liability, products liability, professional malpractice whether couched in terms of contract or tort, or breach of warranty and like theories. In determining whether a case falls within the term "negligence cases," the court shall look to the substance of the action and not the conclusory terms used by the parties.
(b) This section does not apply to any action brought by any person to recover actual economic damages resulting from pollution, to any action based upon an intentional tort, or to any cause of action as to which application of the doctrine of joint and several liability is specifically provided by chapter 403, chapter 498, chapter 517, chapter 542, or chapter 895.
(5) APPLICABILITY OF JOINT AND SEVERAL LIABILITY.  Notwithstanding the provisions of this section, the doctrine of joint and several liability applies to all actions in which the total amount of damages does not exceed $25,000.
§ 768.71(2), Fla. Stat. (Supp. 1986), provides, inter alia, that §§ 768.71  768.81 apply only to causes of action arising on or after July 1, 1986.
[3] Alabama, Maryland, North Carolina, South Carolina, Tennessee, and Virginia still treat a plaintiff's contributory negligence as an absolute bar to recovery. Harrison v. Montgomery County Board of Education, 295 Md. 442, 456 A.2d 894 (1983); Arnold v. Hayslett, 655 S.W.2d 941 (Tenn. 1983); Marley v. Kirby, 271 S.C. 122, 245 S.E.2d 604 (1978); Miller v. Miller, 273 N.C. 228, 160 S.E.2d 65 (1968); Allman v. Beam, 272 Ala. 110, 130 So.2d 194 (1961); Watson v. Virginia Electric & Power Co., 199 Va. 570, 100 S.E.2d 774 (1957).
[4] Compare Bartlett v. New Mexico Welding Supply, Inc., 98 N.M. 152, 646 P.2d 579 (Ct.App.) (abolishing joint and several liability because of its inconsistency with New Mexico's pure comparative negligence system), cert. denied, 98 N.M. 336, 648 P.2d 794 (1982) affirmed sub nom., Taylor v. Delgarno Transportation, Inc., 100 N.M. 138, 667 P.2d 445 (1983). Brown v. Keill, 224 Kan. 195, 580 P.2d 867 (1978) (abolishing joint and several liability because of its inconsistency with Kansas' comparative negligence system), and Boyles v. Oklahoma Natural Gas Co., 619 P.2d 613 (Okla. 1980) (modifying Laubach v. Morgan, 588 P.2d 1071 (Okla. 1978) and restricting the use of joint and several liability to cases in which either the injured plaintiff is fault-free or the jury is unable to apportion fault), with Coney v. J.L.G. Industries, Inc., 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983) (approving joint and several liability under Illinois' comparative negligence system; partially overruled by 1986 Ill. Legis. Serv. 84-1431, art. 5 (West)), Rozevink v. Faris, 342 N.W.2d 845 (Iowa 1983) (approving joint and several liability as consistent with comparative negligence; partially overruled by Iowa Code § 668.4 (1987)), and American Motorcycle Ass'n v. Superior Court, 20 Cal.3d 578 P.2d 899, 146 Cal. Rptr. 182 (1978) (approving the continuation of joint and several liability under California's comparative negligence system; partially overruled by Cal.Civ.Code, § 1431.2 (Deering 1986)).