# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D20-3627
_____

LAYTON TODD MIZELL,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Nassau County.
James Daniel, Judge.

September 21, 2022


B.L. THOMAS, J.

Layton Todd Mizell appeals his conviction for DUI manslaughter. He asserts that the trial court reversibly erred by excluding evidence of the deceased's intoxication, which improperly deprived him of his defense that the deceased's impairment was the sole cause of the fatal collision.

Before trial, the State filed a motion in limine seeking to exclude evidence that the victim's blood contained alcohol and drugs, and that her vehicle contained alcohol bottles, hydrocodone containers, and other items indicative of impaired driving. The victim's blood-alcohol content was 0.17, twice the legal limit for which a presumption of impairment applies under section

316.1934(2)(c), Florida Statutes (2018).[1] The victim also had active ingredients of marijuana and opioid analgesics in her body at the time of the accident.

The State argued that this evidence was barred under section 90.404, Florida Statutes (2018), as an impermissible use of character evidence, and under section 90.403, Florida Statutes (2018), as more prejudicial than probative. In response, the defense argued that this evidence was highly probative to show causation, and thus its probative value outweighed its prejudicial effect. The trial court granted the State's motion, relying on *Edwards v. State*, 39 So. 3d 447 (Fla. 4th DCA 2010), reasoning that without competent evidence of the victim's contribution to the accident, evidence of her possible impairment was not probative of any material issue.

At trial, the State presented two witnesses who saw the accident. The accident occurred at night on Lem Turner Road in Nassau County. Appellant was driving northbound. The victim was traveling southbound. The road is a two-lane road, and the speed limit is 45 miles per hour.

The State's first witness was driving behind Appellant for eight to ten minutes. The witness described Appellant's driving pattern as erratic—Appellant's vehicle failed to maintain its lane and would periodically slow down and speed up. He also observed Appellant move into the southbound lane three or four times. The witness testified he attempted to call 911 to report Appellant's dangerous and erratic driving but lacked cell-phone coverage.

This witness then saw Appellant cross into the southbound lane where Appellant's vehicle hit the deceased's vehicle head on. The witness observed the deceased's vehicle take evasive action to the right to avoid Appellant's vehicle. However, the witness

---

[1] "If there was at that time a blood-alcohol level or breath-alcohol level of 0.08 or higher, that fact is prima facie evidence that the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired." § 316.1934(2)(c), Fla. Stat.

testified that he only observed about three seconds before the crash.

The second witness was driving in front of Appellant. He testified that for about eight and a half miles, Appellant repeatedly sped up to get close to the rear of the witness's vehicle. Appellant drove so close to the witness's car that the witness could not see Appellant's headlights. The second witness watched Appellant through his rear-view mirrors and never saw Appellant move into the southbound lane until the accident occurred.

Seconds before the accident, the second witness saw a vehicle coming toward him in the southbound lane. As the vehicle in the southbound lane passed, the second witness looked in his side-view mirror to see how close Appellant was to the rear of his vehicle. As Appellant approached the witness's vehicle, Appellant drove halfway into the southbound lane where he hit the deceased's vehicle head on.

The collision killed the victim immediately. Appellant suffered serious injuries, including major trauma to one leg after it was pinned under the steering wheel and crushed by the dashboard.

When emergency personnel removed Appellant from his car, one of the witnesses identified the odor of alcohol on Appellant's breath and both observed beer cans in his car. The EMT witnesses observed an open alcoholic beverage in the driver's side door, and multiple alcoholic beverage cans and bottles scattered throughout and around the vehicle. Appellant admitted to the EMT witness that he had been drinking. Throughout the encounter, Appellant was alert and oriented based on the assessment tools used to review his condition, but he did not know where he was.

On the Glascow Coma Scale, which is used to assess a person's mental status, Appellant scored a perfect fifteen. But multiple witnesses testified that Appellant exhibited signs of impairment that night. Sergeant Wettstein, who responded to the accident, testified that he observed a strong odor of alcohol on Appellant's breath and inside Appellant's vehicle. He also testified that Appellant was dazed, and his eyes were watery, glassy, and

bloodshot.[2] He noticed that Appellant's speech was mumbled, slow, and slurred. Corporal Tolman spoke with Appellant at the hospital. He observed an odor of alcohol on Appellant's breath and a lethargic demeanor. Appellant's blood sample, taken approximately two hours after the accident, showed a blood-alcohol content of 0.116 and 0.115.

Sergeant Bennett with Florida Highway Patrol responded to the accident around midnight, and the vehicles had not been moved. The victim was still in the driver's seat of her vehicle, but Appellant was no longer on scene. Sergeant Bennett examined the scene, took photographs, and prepared a field-sketch diagram. One of the photographs of the inside of Appellant's vehicle depicted beer bottles. Another photograph showed beer bottles and cans inside and outside the vehicle. Some beer cans were open, and some had ruptured.

Based on the evidence at the scene, including vehicle parts, debris, and gouge marks, Sergeant Bennett determined that the accident was an offset, head-on collision that occurred in the southbound lane, the lane in which the deceased was traveling.

Appellant testified that at the time of the accident, he had a cooler with beer in his car from a previous hunting trip. He had both empty and full beer cans in the cooler. He asserted that on the night of the accident, he drank three cans of beer and a sip of a fourth between 9:40 p.m. and 10:20 p.m. After drinking, he did not feel impaired and began driving home around 10:20 p.m. When Appellant turned onto the road where the accident occurred, he immediately noticed that the vehicle behind him had its bright lights on. These lights distracted him, and he tried to get away from the lights by passing the vehicles in front of him.

Appellant testified that before the accident, he again sped up to try to pass the car in front of him. He saw a car from the other lane move into his lane. Appellant jerked to the left, *into the opposite lane*, to avoid the car. At the same time Appellant jerked

---

[2] Appellant has one prosthetic eye from a childhood golf accident.

4

to the left, the oncoming car also moved back into its lane. As a result, the cars collided.

Appellant stated that he told the paramedics, his hospital nurse, and two state troopers that he drank alcohol before the accident. Appellant testified that he did not feel affected by the alcohol he had consumed that night.

A defense expert witness in forensic medicine testified that Appellant's blood-alcohol content at the time of the accident was approximately 0.05, for which no statutory presumption of impairment is required.

Corporal Mueller testified in rebuttal that he obtained the event data recorder ("EDR") from the deceased's vehicle.[3] According to the EDR, the deceased was traveling 52.8 miles per hour and was using cruise control. There was nothing unusual about the deceased's movements prior to 0.15 seconds before the crash. In the final 0.15 seconds before impact, the deceased took evasive action by steering to the right, away from Appellant's travel lane, and applying the brakes.

After Appellant testified, the defense requested to reopen the evidentiary and causation issue regarding the deceased's intoxication at the time of the accident. Both parties presented extensive argument. The trial court determined that the material issue was whether Appellant was in the deceased's lane. As a result, the trial court held, "[i]n this case, I don't think the intoxication of the victim tends to prove who was in whose lane, and so I will sustain the objection."

The jury found Appellant guilty of DUI manslaughter, as charged. Appellant moved for a new trial, arguing in part that the trial court erred by excluding evidence of the deceased's intoxication. The trial court once again upheld its previous ruling, stating that the deceased's intoxication and use of drugs at the time of the accident had no probative value on causation.

---

[3] An EDR is like a black box in an airplane, and it reflected what was happening in the victim's vehicle the last 4.56 seconds before the accident.

5

We review a trial court's evidentiary ruling for abuse of discretion. *Johnson v. State*, 969 So. 2d 938, 949 (Fla. 2007). All relevant evidence is admissible, and relevant evidence is that which tends to prove or disprove a material fact. §§ 90.401-.402, Fla. Stat. (2018).

The third element of DUI manslaughter requires that a defendant "cause *or contribute* to causing" the death of a victim while operating a vehicle while impaired. § 316.193(3)(c)3., Fla. Stat. (2018) (emphasis added). For a decedent's conduct to constitute a defense to DUI manslaughter, the conduct must be viewed as the *sole proximate cause* of an accident. *Miller v. State*, 250 So. 3d 144, 145 (Fla. 1st DCA 2018).

Florida's DUI manslaughter statute imposes an expansive responsibility on drivers who consume alcohol and are involved in an accident that causes serious injury or death. The Florida Supreme Court stated that the statute requires only that the operation of a vehicle cause an accident, and "*any* deviation or *lack of care* on the part of a driver under the influence to which the fatal accident can be attributed will suffice." *Magaw v. State*, 537 So. 2d 564, 567 (Fla. 1989) (emphasis added); *see also Clark v. State*, 315 So. 3d 776, 780 (Fla. 1st DCA 2021) ("The State must only present evidence to show the driver's conduct *contributed* to the victim's death." (emphasis added)).

This Court has held that it is reversible error to exclude any evidence that "tends in any way, even indirectly, to establish a reasonable doubt of [a] defendant's guilt." *Martin v. State*, 110 So. 3d 936, 938 (Fla. 1st DCA 2013) (quoting *Rivera v. State*, 561 So. 2d 536, 539 (Fla. 1990)). But in quoting *Rivera*, the Court in *Martin* failed to quote the following language: "[h]owever, the admissibility of this evidence must be gauged by the *same principle of relevancy as any other evidence offered by the defendant*." *Rivera*, 561 So. 2d at 539 (emphasis added). There, the defendant sought to introduce evidence of a similar murder that occurred while the defendant was in custody to disprove his commission of the charged murder. *Id.* at 539–40. The supreme court upheld the trial court's exclusion of this reverse *Williams*[4]-rule evidence, finding

---

[4] *Williams v. State*, 110 So. 2d 654 (Fla. 1959).

6

the dissimilarities between the reverse *Williams*-rule evidence and the victim's murder sufficient to preclude the reverse *Williams*-rule evidence. *Rivera*, 561 So. 2d at 539–40.

Thus, even in a death penalty case, a trial court's ruling excluding potentially exculpatory evidence will be upheld if the evidence is not sufficiently relevant. And under section 90.403, trial courts *must* exclude *even relevant* evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence."

Here, there was an obvious danger in admitting evidence, even relevant evidence, that would allow the jury to improperly consider the deceased's intoxication, because the statute requires that any fault of the deceased be the sole cause of the fatal collision to absolve Appellant of guilt. Appellant violated the statute, even if he only contributed to the accident, so the proffered evidence had to show that the victim was 100% at fault for the collision.[5]

The excluded evidence did not show that the deceased was solely responsible for the fatal accident. In addition, the potential danger of this evidence to mislead the jury renders it inadmissible under section 90.403. *See Marchina v. State*, 702 So. 2d 1369 (Fla. 1st DCA 1997) (holding that the evidence should have been excluded under section 90.403, as its very limited probative value was outweighed by the danger of unfair prejudice and was relevant only to prove bad character of defendant in violation of section 90.404(2)(a)). While the trial court did not rely on section 90.403, and this rationale, we may consider this logic and legal authority

---

[5] For a general comparison to a civil case, in *Walt Disney World Co. v. Wood*, 515 So. 2d 198 (Fla. 1987) (superseded by statute in *Fabre v. Marin*, 623 So. 2d 1182 (1993)), the supreme court held that a defendant who was only one percent at fault remained liable based on joint and several liability. Similarly in the criminal context of DUI manslaughter and vehicular homicide, if a criminal defendant contributes in any way to a fatal accident, the defendant may be charged and convicted regardless of the fault of the deceased or seriously injured victim. While the burdens of persuasion are obviously different in civil and criminal cases, the rule of joint and several liability is instructive.

7

in affirming the judgment. *See Childers v. State,* 936 So. 2d 585, 593–96 (Fla. 1st DCA 2006) (en banc) (affirming judgment under "tipsy coachman" rule, because, although trial court erred in excluding evidence as irrelevant, evidence was properly excluded under section 90.403). We thus conclude that the trial court did not err in excluding this evidence when it carefully and commendably considered all aspects of this case.

And even if the trial court erred, which we do not decide, any error was harmless. Here, there is no reasonable possibility that excluding evidence of the victim's intoxication contributed to Appellant's conviction. *Cooley v. State*, 273 So. 3d 258, 261 (Fla. 1st DCA 2019) (holding that the Court "need not decide whether the trial court's decision to allow evidence" was error, as any error was harmless); *Thorne v. State*, 271 So. 3d 177, 187 (Fla. 1st DCA 2019) ("Thus, we hold the error was harmless beyond a reasonable doubt in light of the extensive inculpatory evidence and the entire context" of the excluded evidence).

Even accepting Appellant's testimony as credible, Appellant's conduct contributed to the accident. Appellant testified that a car crossed into his lane, so he reacted and moved into the opposite lane. Based on this evidence alone, Appellant contributed to the accident by moving into the lane where the accident occurred. *See Magaw*, 537 So. 2d at 567; *Clark*, 315 So. 3d at 780. Because Appellant presented evidence that he caused or contributed to the accident, there is no reasonable possibility that the error of excluding the evidence of the victim's intoxication contributed to the verdict. *See* § 316.193(3)(c)3., Fla. Stat.

In reaching this conclusion, we considered the decision in *Getts v. State*, 313 So. 3d 964 (Fla. 2d DCA 2021), relied on by Appellant here, which had not been decided during the trial proceedings. In *Getts*, the court held the trial court erred by excluding evidence of an intoxicated driver involved in a fatal accident. 313 So. 3d at 968. There, the decedent was a passenger of the defendant who was killed when the defendant hit another vehicle from behind. *Id.* at 966.

In *Getts*, the defendant was driving in the right-hand lane of a four-lane divided highway. *Id.* at 965–66. The EDR evidence

showed that Getts was traveling more than one hundred miles per hour. *Id.* at 966. No witness corroborated Getts' testimony claiming that the driver of the other vehicle had veered into Getts' lane. *Id.* Holding that a jury could disbelieve all the State's evidence and believe Getts's self-serving testimony, the court there decided that the evidence of the other driver's intoxication could nevertheless prove that the driver was the sole cause of the accident. *Id.* at 968–69. We find the logic of the decision unpersuasive under *Magaw*, and the facts distinguishable from this case, where both the State's evidence and Appellant's testimony support the trial court's ruling. 537 So. 2d at 567.

Furthermore, the State presented ample, independent evidence supporting the jury's verdict so that knowledge of the victim's intoxication would not have affected Appellant's conviction. Two witnesses testified that Appellant was driving erratically eight to ten minutes before the accident occurred. Additionally, both witnesses saw Appellant move into the lane where the accident occurred, hitting the deceased's vehicle. Multiple witnesses testified that Appellant seemed impaired, and Appellant testified that he had consumed alcohol before the accident. The State submitted evidence that Appellant's blood-alcohol content on the night of the accident was between a 0.115 and 0.116. The State also presented evidence that the fatal collision occurred in the deceased's lane, which Appellant never contradicts, and which is supported by the information on the deceased's vehicle's EDR.

Considering Appellant's own testimony and the additional evidence of Appellant's impairment, the exclusion of the evidence of the decedent's intoxication was harmless, if error at all. *See Thorne*, 271 So. 3d at 187.

AFFIRMED.

NORDBY and TANENBAUM, JJ., concur.

———————————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————————

Rick A. Sichta and Susanne K. Sichta of The Sichta Firm, LLC, Jacksonville, for Appellant.

Ashley Moody, Attorney General, Daren L. Shippy, Assistant Attorney General, Tallahassee, for Appellee.