690 So.2d 1273 (1997)
Y.H. INVESTMENTS, INC., Petitioner,
v.
Raquel GODALES, individually, and as guardian of Armando Rodriguez, a minor, Respondent.
No. 87504.
Supreme Court of Florida.
March 27, 1997.
G. Bart Billbrough and Geoffrey B. Marks of Walton, Lantaff, Schroeder & Carson, Miami, for Petitioner.
John M. Cooney and Robert L. Parks of Haggard, Parks & Stone, P.A., Coral Gables, for Respondent.
Tracy Raffles Gunn of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Nationwide Mutual Fire Insurance Company *1274 and Florida Defense Lawyers' Association, Amicus Curiae.
Betsy E. Gallagher of Gallagher & Howard, Tampa, for United Services Automobile Association and USAA Casualty Insurance Company, Amicus Curiae.
James K. Clark of James K. Clark & Associates, Miami, for State Farm Mutual Automobile Insurance Company, Amicus Curiae.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for The Academy of Florida Trial Lawyers, Amicus Curiae.
PER CURIAM.
We have for review Godales v. Y.H. Investments, Inc., 667 So.2d 871 (Fla. 3d DCA 1996). We accepted jurisdiction to answer the following question which was certified to be of great public importance:
DOES SECTION 768.81, FLORIDA STATUTES (1993), REQUIRE THAT A MINOR CHILD PLAINTIFF'S AWARD BE REDUCED BY THE NEGLIGENCE OF A NON-PARTY PARENT OR GUARDIAN, AND TO THE BENEFIT OF THE DEFENDANT TORTFEASOR?
667 So.2d at 873. We have jurisdiction pursuant to article V, section 3(b)(4) of the Florida Constitution. For the reasons expressed below, we rephrase the question and, as rephrased, answer the question in the affirmative and quash the decision under review. We rephrase the question as follows:
DOES SECTION 768.81, FLORIDA STATUTES (1993), PERMIT THE CONSIDERATION OF THE NEGLIGENCE OF A NON-PARTY PARENT OR GUARDIAN IN DETERMINING THE CAUSE OF A MINOR'S INJURY IN A NEGLIGENCE ACTION AGAINST A THIRD PARTY TORTFEASOR?

MATERIAL FACTS
Two-year old Armando Rodriguez (Armando) and his mother, petitioner Raquel Godales (Godales), were sitting on the stairs connecting the first and second floors of their apartment building, owned and managed by respondent Y.H. Investments, Inc. (Y.H.).[1] While trying to put his shoe on, Armando fell backwards beneath the lower guardrail of the open staircase and hit the ground five feet below, fracturing his skull. Godales brought a negligence action against Y.H. on her son's behalf and on her own derivative claim, alleging negligent maintenance of the premises by reason of the guardrail. Y.H. asserted in defense that Godales was also at fault in the accident by reason of her negligent supervision of her child, and that Y.H. should only be held liable for the percentage of damages it actually caused.
On the day of trial, Godales withdrew her derivative claim. During the trial, it was established that the opening between the tread of the steps and the lower guardrail was in violation of the six-inch maximum width mandated by the South Florida Building Code. The court instructed the jury that Y.H. was negligent as a matter of law, leaving only the issues of whether and the extent to which Y.H.'s negligence was a legal cause of Armando's injury. The court also instructed the jury to determine whether Godales was negligent for failing to provide adequate supervision of the child, and whether such negligence was a legal cause of Armando's injury. The verdict form listed both Y.H. and Godales, with interrogatories to determine the percentage of any negligence attributable to them. The jury returned a verdict finding Y.H. and Godales each to be fifty percent negligent in causing the accident and awarding Armando $42,500 in damages for pain and suffering. Accordingly, pursuant to the provisions of section 768.81, Florida Statutes (1993), the trial court entered a final judgment against Y.H. for the percentage of damages attributable to its negligence, i.e., fifty percent of the total damages, or $21,250.
On appeal, the Third District reversed and remanded for a new trial. The district court held that the trial court erred in allowing the jury to consider the negligence of Armando's mother and in directing that Armando recover only fifty percent of the jury's assessed damages from Y.H. Godales, 667 So.2d at *1275 873.[2] The district court also certified the question referred to above.

LAW AND ANALYSIS
This case presents us with a straightforward issue concerning the application of the comparative fault statute, section 768.81(3), Florida Statutes (1993).[3] However, before addressing the statute's application here, we will briefly review the case law on comparative negligence.
In the landmark decision in Hoffman v. Jones, 280 So.2d 431 (Fla.1973), we abolished the harsh and judicially created doctrine of contributory negligence, which completely barred recovery by a claimant whose own negligence may have contributed only slightly to an accident.[4] Under that doctrine a claimant found to be only five percent at fault was barred from recovering any part of her damages from a tortfeasor that may have been ninety-five percent at fault in causing those damages. In abolishing the doctrine, we reasoned that "today it is almost universally regarded as unjust and inequitable to vest an entire accidental loss on one of the parties whose negligent conduct combined with the negligence of the other party to produce the loss." 280 So.2d at 436. In place of such a harsh doctrine we adopted the doctrine of comparative negligence and its premise that fault was the basis of liability. We found that "apportionment of the loss among those whose fault contributed to the occurrence is more consistent" with that underlying policy. Id.
Shortly thereafter we extended fault apportionment to joint tortfeasors, allowing contribution among them for the first time in Lincenberg v. Issen, 318 So.2d 386 (Fla.1975). In receding from another judicially created doctrine,[5] we found "no equitable justification for recognizing the right of the plaintiff to seek recovery on the basis of apportionment of fault while denying the right of fault allocation as between negligent defendants." Id. at 391. However, recognizing that the legislature had recently passed section 768.31, Florida Statutes (1975), the Uniform Contribution Among Joint Tortfeasors Act, we declined consideration of the abrogation of joint and several liability in deference to legislative attention to these issues.[6] 318 So.2d at 393-94.
In 1987, in a case involving a 1971 accident,[7] we again deferred to the legislature and declined to abrogate the doctrine of joint and several liability in its entirety. Walt Disney World Co. v. Wood, 515 So.2d 198 (Fla.1987). Despite the jury's verdict that defendant Disney was only one percent at fault, while the plaintiff and her fiancé were fourteen percent and eighty-five percent negligent, *1276 respectively, we affirmed a judgment against Disney for eighty-six percent of the damages, based upon the existing doctrine of joint and several liability. Id. at 199. Disney contended that it was patently unfair for a party only one percent at fault to have to pay eighty-six percent of the damages. While conceding the logic of Disney's argument that "a defendant should only be held responsible to the extent of his fault in the same way as a plaintiff under comparative negligence," we determined that the public policy issues involved should be resolved in the legislature rather than by judicial action. Id. at 200, 202. Indeed, following the district court decision in Walt Disney World Co. v. Wood, 489 So.2d 61 (Fla. 4th DCA 1986), approved, 515 So.2d 198 (Fla.1987), the Florida legislature did enact a comparative fault statute, section 768.81, Florida Statutes (Supp.1986), that squarely directed that any judgment against a defendant be based on the defendant's percentage of fault in causing any damage and not on joint and several liability.[8] Section 768.81(3) provides:
In cases to which this section applies, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability; provided that with respect to any party whose percentage of fault equals or exceeds that of a particular claimant, the court shall enter judgment with respect to economic damages against that party on the basis of the doctrine of joint and several liability.
(Emphasis added.) Hence, the legislature, in essence, acted to do what we declined to do in Walt Disney World Co. v. Wood.[9] Under section 768.81 defendants like Walt Disney would no longer have to pay damages in excess of the amount their conduct actually caused. In subsection (3), clause one, the legislature totally abolished joint and several liability for noneconomic damages, i.e., pain and suffering, while retaining such liability in clause two for economic damages[10] for "any party whose percentage of fault equals or exceeds that of a particular claimant," albeit with several other enumerated exceptions. See § 768.81(4)(b), (5), Fla. Stat. (1993).
In August of 1993, we applied section 768.81 in two cases: Fabre v. Marin, 623 So.2d 1182 (Fla.1993), and Allied-Signal, Inc. v. Fox, 623 So.2d 1180 (Fla.1993). Echoing the original policy concerns expressed in Hoffman about "apportionment of the loss among those whose fault contributed to the occurrence", 280 So.2d at 436, we held that the major thrust of the statute was to apportion a tortfeasor's liability for a claimant's damages on the basis of the particular tortfeasor's "percentage of fault" in causing the damages.
In Fabre, Mrs. Marin was injured when the car her husband was driving swerved into a guardrail after allegedly being cut off by a car driven by Mrs. Fabre. 623 So.2d at 1183. At the jury charge conference, the court denied the Fabres' request that the verdict form allow the jury to apportion fault between the two drivers, Mrs. Fabre and Mr. Marin, a non-litigant.[11] 623 So.2d at 1183. However, to forestall a possible retrial on the issue, Mrs. Marin, the plaintiff, agreed to have the issue of Mr. Marin's negligence submitted to the jury subject to the court's post-trial determination of whether any affirmative *1277 finding would reduce Mrs. Marin's recovery. Although the jury returned a verdict finding Mrs. Fabre and Mr. Marin each fifty percent at fault, the court entered judgment against Mrs. Fabre for the entire $350,000 award of noneconomic damages. Id. On appeal, the Third District upheld the judgment.
We quashed the Third District's decision, stating that "we believe that the legislature [by the enactment of 768.81] intended that damages be apportioned among all participants to the accident" id. at 1185, and that "[l]iability is to be determined on the basis of the percentage of fault of each participant to the accident and not on the basis of solvency or amenability to suit of other potential defendants." Id. at 1186. Accordingly, we remanded the case with directions that the judgment against Fabre be entered on the basis of Mrs. Fabre's fifty percent of fault as determined by the jury. Id. at 1187.
In the companion case of Allied-Signal, we employed the same reasoning where one of the joint tortfeasors enjoyed employer immunity under the workers' compensation law. In answering a certified question from the Eleventh Circuit, we held that our comparative fault statute required consideration by the jury of all parties' comparative fault in order to determine a specific party's percentage of fault, regardless of the fact that one of the other parties may be immune from liability and not joined as a party to the action. Allied-Signal, 623 So.2d at 1182. The gist of the decisions in Fabre and Allied-Signal was our holding that the legislature intended that a judgment against a particular tortfeasor be based on "such party's percentage of fault" in causing the claimant's damages.
Hence, under section 768.81, a tortfeasor who is determined to have been only ten percent at fault in causing an injury will only be liable for ten percent of the damages. That is a simple and rather straightforward proposition and represents a legislative policy choice to apportion liability for damages based upon a party's fault in causing the damage.[12] It appears to be based upon the same considerations of fairness that were responsible for our decision in Hoffman that claimants have their damages reduced only by their percentage of fault.

THIS CASE
As noted previously, this case presents a straightforward application of section 768.81(3), much like our application of the statute in Fabre and Allied-Signal. We hold here, just as we did in Fabre and Allied-Signal, that the fact that Godales enjoyed immunity from liability was no bar to the jury's consideration of her fault in causing the accident. For example, our Fabre opinion expressly anticipated participants such as Godales when we reasoned that "the only means of determining a party's percentage of fault is to compare that party's percentage to all of the other entities who contributed to the accident, regardless of whether they have been or could have been joined as defendants." 623 So.2d at 1185 (emphasis added). Indeed, had Armando been in the care of a hired baby-sitter or an unrelated adult, it is apparent that the fault of the baby-sitter or adult could be properly considered in determining the cause of the accident and the percentage of fault of the responsible parties. Similarly, had Godales, like Mr. Marin, been found to be fifty percent at fault in causing an automobile accident in which Armando was injured, it is apparent that her percentage of fault could be properly considered as Mr. Marin's fault was considered in Fabre.
Godales falls into that category of participants to an accident who is immune from suit from either her child, Ard v. Ard, 414 So.2d 1066, 1067 (Fla.1982) (holding that "[i]f the parent is without liability insurance ... then parental immunity is not waived and the child cannot sue the parent"), or the co-tortfeasor due to her lack of liability coverage. Joseph v. Quest, 414 So.2d 1063, 1065 n. 5 (Fla.1982) (disallowing contribution against co-tortfeasor parent if parent lacks liability insurance). However, including Godales' name on the verdict form is consistent with Fabre and Allied-Signal wherein we approved similar inclusions for jury consideration despite interspousal and employer/employee *1278 immunity, respectively. Our decision today simply applies section 768.81 in the parent/child context just like it was applied in the husband/wife context in Fabre.
Godales' negligence is not "imputed" to her child any more than Mr. Marin's negligence was "imputed" to his wife. Rather, section 768.81 provides that Y.H. will be held liable only for its own fault, and not have to pay for the fault of Godales too. Further, and contrary to the inference from the phrasing of the certified question, in no way does this fault apportionment reduce or preclude the child's recovery of damages; rather, the child is entitled to a judgment for damages against the non-parent tortfeasor "on the basis of such party's percentage of fault", as expressly provided in section 768.81. Since there is no dispute about the jury's determination that Y.H. was only fifty percent at fault in causing Armando's injuries, any judgment against Y.H. must be entered, under section 768.81, for fifty percent of Armando's damages.
In summary, we answer the certified question in the affirmative and hold that the name of the parent of a minor child plaintiff alleged to be at fault may be included on the jury verdict form in a personal injury case, provided that there is sufficient evidence of fault, and irrespective of whether the parent is immune from suit by the child, the co-tortfeasor, or both. Thus, we quash the decision under review and remand for further proceedings consistent with this opinion.[13] Further, as it was not a subject of our review, we do not disturb that part of the Third District's holding that remanded for a new trial based on its treatment of the issue of the jury's failure to award damages for Armando Rodriguez's medical expenses.
It is so ordered.
OVERTON, GRIMES, HARDING and ANSTEAD, JJ., concur.
WELLS, J., dissents with an opinion, in which KOGAN, C.J., concurs.
SHAW, J., dissents.
WELLS, Judge., dissenting.
The majority's reversal of the district court's decision writes into Florida law an unforeseen consequence of section 768.81, Florida Statutes (1995), which is brought about by this Court's construction of that statute in Fabre v. Marin, 623 So.2d 1182 (Fla.1993). A confluence of this Court's decisions now effectively leaves an unemancipated minor to suffer the total consequences of a tort with no effective means to recover full damages for the child's injuries.
The opinions coming together to bring about this result are: Fabre, which effectively allows a child's intangible damages to be reduced by the percentage of fault attributable to the child's parent(s); Fitzgibbon v. Government Employees Insurance Co., 583 So.2d 1020 (Fla.1991), which upholds family exclusions in liability and uninsured motorist insurance policies; and Ard v. Ard, 414 So.2d 1066 (Fla.1982), which allows a child to sue a parent to recover damages for torts but only to the extent of available liability insurance; and if the parent is without liability insurance or if a policy contains an exclusion clause for household or family members, then parental immunity is not waived and a child cannot sue a parent. The reality is that virtually every liability and uninsured motorist policy issued in Florida contains a family exclusion. Thus, a child is effectively barred from suing a parent. Allowing the child's recovery in the instant case to be reduced by the percentage of parental fault leaves the child without recourse for the portion of damages which the child cannot recover because the neglect of the child's parent(s) is effectively imputed to the child.
The appellant, advocates of Fabre, and the present majority argue in favor of this result on the fundamental basis that the concept of comparative fault limits a defendant's liability to that the percentage of fault the defendant causes regardless of other legal considerations impacting the victim. They contend that since nonparent defendants would have to pay for more than their percentage of fault if juries did not evaluate parental fault *1279 and assess such fault on their verdict forms, any other consideration would fall in deference to this interpretation of section 768.81. I believe this blind adherence to Fabre fails the real-world tests of logic, fairness, and public policy.
It fails when the following legal choice concerning damages is considered. We have strongly adhered in Florida to the "but for" causation test in tort cases. In Jones v. Utica Mutual Insurance Co., 463 So.2d 1153 (Fla.1985), this Court held that under this test a defendant is only liable for an injury produced or substantially produced in a natural and continuous sequence by the defendant's tortious conduct if "but for" such conduct the injury would not have occurred. Id. at 1156. See also Fla. Std. Jury Instr. (Civ.) 5.1(a). Moreover, this Court also has held that a child of tender years cannot be at fault for any percentage of his own injuries as a matter of law. See Swindell v. Hellkamp, 242 So.2d 708 (Fla.1970). Thus, we face a legal choice as to who pays the damages for the percentage of fault other than that of the defendant. This choice is between a child who is legally faultless and who in legal reality cannot recover from a parent who contributes to the child's injury and a defendant "but for" whose negligence the injury would not have occurred. Logically, the legal choice should be in favor of the legally faultless child.
It fails when it is considered in the light of Florida's longstanding policy correctly favoring children. The majority opinion will effectively dismantle the attractive nuisance doctrine, which is based upon the concept of the legally faultless child. Cases to which the attractive nuisance doctrine applies nearly always are based upon circumstances in which a child is not being closely supervised at the time of attraction onto a landowner's property. The doctrine has as its key element that the child does not discover or realize the risk because of the child's age. See Martinello v. B & P USA, Inc., 566 So.2d 761 (Fla.1990). The doctrine is a recognition that a landowner has control over an injury-producing attraction and Florida's law has chosen to protect children by placing full responsibility on the landowner if the elements of attractive nuisance are proven. However, the majority's opinion effectively discards the concept of a legally faultless child in that, for all practical purposes, it imputes knowledge of risk to a child by having the child's damages reduced by the percentage of fault of the parent. This is a significant and detrimental retreat from Florida's long-recognized protection for children.
The second argument advanced by the appellant is that section 768.81 and Fabre, as clarified in Wells v. Tallahassee Memorial Regional Medical Center, Inc., 659 So.2d 249 (Fla.1995), pertains only to noneconomic damages. Therefore, even though the child is deprived of some damages, the important economic damages (medical expenses and earning capacity) are not affected. This argument is hollow because in child cases earnings and earning capacity cannot be established since a child has no earnings or occupational history. In these cases, loss of enjoyment of life, inability to lead a normal life, and other such intangible damages are often the only real recovery that can be made on behalf of a child to protect the child's future.
Appellant further argues that having parental fault evaluated on the verdict form will not have a "chilling effect" on bringing actions on behalf of children.[14] I do not agree. Actions brought on behalf of children are totally dependent on parental pursuit of them. If depositions and litigation arguments are to focus upon the negligence of parents from whom no recovery can be made, actions on behalf of children will not be brought. Caring, close families will be deterred from bringing actions in proceedings which lack the due process safeguard of legal representation for parents who will have their fault for a child's tragic injury assessed on the verdict by the jury. Such a parent may not have a financial exposure but will plainly have an emotional exposure of *1280 having such a jury assessment, which will scar both parent and child for life. At a time when society recognizes the importance of supporting family units, I must conclude that the majority's decision is harmful to families.
Experience is proving what was apparent to most tort lawyers at the outset. Fabre was wrongly decided, and its application results in an even greater wrong. The proper administration of civil justice in this state increasingly requires that this Court recede from Fabre. I would do it now.
However, even if the majority continues to follow Fabre, I would adopt and approve the well-reasoned opinion of the district court.
KOGAN, C.J., concurs.
NOTES
[1] The facts are largely taken from the district court's opinion. 667 So.2d at 871-72.
[2] The Third District also held that a new trial was warranted because the jury's award of zero damages for medical expenses was inconsistent with its finding of $42,500 for past pain and suffering. Id.
[3] We have revisited the statute several times since Fabre v. Marin, 623 So.2d 1182 (Fla.1993), was decided, most recently in 1996. See Nash v. Wells Fargo Guard Services, Inc., 678 So.2d 1262, 1264 (Fla.1996) (holding "that in order to include a nonparty on the verdict form pursuant to Fabre, the defendant must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty"). We note that Nash had not yet been decided when the case before us was litigated. Furthermore, Godales has not argued that a Nash issue exists wherein specific pleading, notice, and proof requirements are predicates to a jury instruction on apportionment of fault which includes non-litigants to the action. 678 So.2d at 1264. Therefore, that issue is not before us and will not be considered in this opinion.
[4] See, e.g., Louisville & Nashville R.R. v. Yniestra, 21 Fla. 700 (1886). Legal historians trace the rule that contributory negligence was an absolute bar to recovery to the English case of Butterfield v. Forrester, 11 East 60, 103 Eng. Rep. 926 (K.B. 1809).
[5] The principle of denying contribution among joint tortfeasors originated in another English case, Merryweather v. Nixan, 8 Term. Rep. 186, 101 Eng. Rep. 1337 (K.B.1799). This Court adopted the principle in Love v. Gibson, 2 Fla. 598 (1849).
[6] This Court adopted the principle of joint and several liability in Louisville & Nashville Railroad v. Allen, 67 Fla. 257, 65 So. 8 (1914).
[7] The accident in Wood v. Walt Disney World Co., 396 So.2d 769, 770 (Fla. 4th DCA 1981), took place on November 27, 1971. The lengthy course of litigation included an initial trial, an appeal to the Fourth District which reversed and remanded the case, a re-trial, another appeal, and finally, review by this Court.
[8] The Fourth District's decision in Disney was rendered on April 9, 1986. Section 768.81 only applies to "causes of action arising on or after July 1, 1986, and does not apply to any cause of action arising before that date." Section 768.71(2), Fla.Stat. (Supp.1986).
[9] While not directly evaluating the statute, we did acknowledge its passage in our Disney decision by noting that:

In 1986 the legislature substantially modified the doctrine of joint and several liability as part of its comprehensive tort reform law. § 768.81, Fla.Stat. (Supp.1986). The fact that the new statute did not entirely abolish the doctrine but provided for apportionment of fault only under certain circumstances further indicates the complexity of the problem and suggests there may be no one resolution of the issue which will satisfy the competing interests involved.
515 So.2d at 201.
[10] E.g., lost income, medical expenses, etc.
[11] At the time of the accident, Mrs. Marin could not sue her husband because of the doctrine of interspousal immunity. Subsequently, we abolished that doctrine in Waite v. Waite, 618 So.2d 1360 (Fla.1993).
[12] The parties acknowledge that this issue has been repeatedly debated in the legislature in recent years, but the legislature has taken no action to amend section 768.81.
[13] We decline to address Godales' argument that Y.H. was strictly liable for its violation of the building code ordinance. The Third District did not address the issue in its opinion.
[14] These actions usually are brought by parents as the natural or legal guardians of their children.