# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-2037

_____

OLVIN MEJIA PALACIOS,

    Appellant,

    v.

AGENCY FOR HEALTH CARE
ADMINISTRATION,

    Appellee.

_____


On appeal from the Division of Administrative Hearings.
Robert L. Kilbride, Administrative Law Judge.


August 20, 2025

TANENBAUM, J.

The Medicaid Act mandates States like Florida—federal-funds recipients providing medical assistance to the financially needy—"seek reimbursement for medical expenses incurred on behalf of beneficiaries who later recover from third-party tortfeasors." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 633 (2013); *see* 42 U.S.C. § 1396k(a)(1)(A); 42 U.S.C. § 1396a(a)(25)(H), (45). But the law also precludes States from recouping that assistance from a beneficiary's "property." 42 U.S.C. § 1396p(a)(1). While "the beneficiary has a property right in the proceeds of [a] settlement" with the tortfeasor, such that the proceeds come "within the ambit of th[is] anti-lien provision," *Wos*, 568 U.S. at 633; States remain free to "seek reimbursement from the portion

of a settlement designated for the 'medical care'" initially paid for with Medicaid dollars. *Gallardo By & Through Vassallo v. Marstiller*, 596 U.S. 420, 425 (2022); *see also Ark. Dep't of Health & Hum. Servs. v. Ahlborn*, 547 U.S. 268, 284–85 (2006) (noting that statutorily required assignment of payments constituting "reimbursement for medical costs," as provided for under the Medicaid Act, "is an exception to the anti-lien provision"). Florida has a statute governing this apportionment of lump-sum settlements. *See* § 409.910, Fla. Stat. The question presented is whether, in an administrative proceeding held to determine that apportionment, a beneficiary's comparative negligence is a factor relevant to determining how much of the lump settlement proceeds fairly constitutes the beneficiary's medical expenses. We conclude it is not.

I

Olvin Palacios suffered severe injuries when he fell two stories off a roof while doing work.[1] His injuries included a fractured skull, other broken bones, and a collapsed lung. Medicaid paid $35,031.49 in medical costs; Palacios paid an additional $9,653.00 on his own toward his care. His employer had no insurance, but the licensed contractor ultimately responsible for the job did. So Palacios sued the contractor. Discovery during litigation revealed that Palacios could have accessed fall-protection-safety equipment, but he had declined to wear it. Palacio later conceded this equipment—if he had worn it—would have prevented his fall. The facts being what they were, the case settled for $238,500.00. The parties did not stipulate to how much of that amount covered Palacios's medical care.

Meanwhile, Florida's Medicaid Third-Party Liability Act implements the federal Medicaid reimbursement requirements and restrictions outlined above. The act makes Medicaid "the payor of last resort for medically necessary goods and services

---

[1] There is no transcript of the evidentiary hearing. The facts—which neither party appears to dispute on appeal—come from the parties' stipulation and the order on review. We limit our analysis to the legal question regarding proper use of ratios. This is not a sufficiency-of-the-evidence appeal.

furnished to" a beneficiary, "[t]hird-party benefits for medical services" then being "primary to medical assistance provided by Medicaid." § 409.910(1), (3), Fla. Stat. (2020). The Agency for Health Care Administration ("AHCA") has the responsibility to "seek reimbursement from [those] third-party benefits" for the Medicaid assistance. *Id.* (4). The act sets a formula for determining the settlement portion that must be distributed to AHCA, as follows: "After attorney's fees and taxable costs [], one-half of the remaining recovery shall be paid to [AHCA] up to the total amount of medical assistance provided by Medicaid." *Id.* (11)(f)1., 2. To make this calculation, "the fee for services of an attorney retained by the recipient or his or her legal representative shall be calculated at 25 percent of the [] settlement." *Id.* (f)3. This means, without accounting for taxable costs, AHCA's presumptive take would be approximately 37.5 percent (50 percent times 75 percent) of the settlement in a tort action seeking medical expenses as damages. *See Gallardo*, 596 U.S. at 426.

As already mentioned, federal law "limits [AHCA] to reimbursement from the recovered medical expense damages," so the beneficiary "may contest the amount designated as recovered medical expense damages payable to the agency" under the statutory formula set out above. § 409.910(17)(b), Fla. Stat. The beneficiary does so by filing a petition with Florida's Division of Administrative Hearings ("DOAH"), which has the authority to make a final determination as to "the amount of third-party benefits payable to" AHCA. *Id.* To succeed in challenging the statutorily presumptive amount, the beneficiary "must prove, by clear and convincing evidence, that the portion of the total recovery which should be allocated as past and future medical expenses is less than the amount calculated by the agency pursuant to the formula set forth in paragraph (11)(f)." *Id.* Put simply, the question before the administrative law judge ("ALJ") is whether the beneficiary can prove that the amount produced by the statutory formula results in a taking of his property (*i.e.*, settlement proceeds not fairly allocable to medical expenses), which thereby would run afoul of the federal anti-lien statute.

When AHCA sought to collect the full amount of its lien (*i.e.*, the $35,031.49 in hospital charges covered by Medicaid) based on the statutory formula, Palacios contested the amount by filing a

petition with DOAH. At the hearing on his petition, Palacios presented testimony of two expert witnesses and entered fifteen exhibits into evidence. AHCA presented but one exhibit—the summary of the expenses paid by Medicaid for Palacios's benefit—which was duplicative of an exhibit already in evidence. The ALJ accepted the evidence from Palacios—unrebutted by AHCA—establishing the gross value of his damages (both economic and non-economic) to be $1,000,000.00. Also unrebutted was evidence valuing Palacios's past medical expenses at $45,000.00 and future medical expenses at $80,000.00. One of Palacios's experts opined, using a proportionality methodology, that because the settlement amount of $238,500.00 was 23.85 percent of the gross valuation of overall damages, that percentage should be applied to the total medical expenses when determining how much of the settlement amount fairly could be allocated to those expenses and therefore subject to AHCA's lien.

The ALJ generally accepted and applied this "proportionality methodology advanced by [Palacios], and adopted in *Eady* [*v. State*, 279 So. 3d 1249 (Fla. 1st DCA 2019)]." But he did not stop there. The ALJ determined "adjustments [must be] made to the 'total value' based on the uncontradicted finding . . . that there was a very high degree of comparative negligence, by [Palacios], which contributed to causing this workplace accident and his injuries." He reasoned that the "proportionality method[] should include any reasonable and relevant factors affecting how much a plaintiff could expect to receive at trial." According to the ALJ, comparative negligence is one of those factors, "the impact of Palacios's comparative negligence on the total value of his claim [being] highly relevant," such that it "cannot be disregarded when using and applying the proportionality method." The ALJ in turn rejected the valuation advanced by Palacios's experts because "[t]hey failed to explain why [his] comparative negligence should not affect their opinions regarding the total value of the case," their opinions therefore lacking the "required objectivity."

The ALJ explained that if Palacios's suit had gone to trial, the "total recovery at trial would have been $200,000.00 ($1,000,000.00 anticipated trial verdict reduced by Petitioner's 80 percent comparative negligence, equaling a $200,000.00 recovery)." From there, the ALJ concluded that "by settling for

4

$238,500.00, [Palacios] recovered more than 100 percent of the true total value of his claim," so "AHCA is entitled to recover the same proportion, or 100 percent of its Medicaid lien." The ALJ ordered that AHCA could recover the full amount of its $35,031.49 lien from Palacios's settlement proceeds. This was legal error.

II

A

Recall that the ALJ's task was to determine how much of the settlement proceeds—money that otherwise belongs to Palacios as recompense for his claimed damages—was "fairly allocable" to past and future medical expense; so, by law, excepted from the federal anti-lien provision and subject to AHCA's lien. *Giraldo v. Ag. for Health Care Admin.*, 248 So. 3d 53, 56 (Fla. 2018); *Gallardo*, 596 U.S. at 430 (abrogating *Giraldo*, but only because Florida may "seek reimbursement from settlement amounts representing [*both*] past or future payments for medical care"; but not questioning the use of a proportional approach for a "fairly allocable" determination (internal quotation and citation omitted)). In other words, the whole of the settlement proceeds— all $238,500.00—belong to Palacios as his property, *save for* that "portion" of the whole that constitutes compensation for his medical expenses; and when called upon to do so by petition, the ALJ must figure out what that "portion" is. § 409.910(17)(b), Fla. Stat.

The key here is the statute's directive for the ALJ to focus on a ratio: some percentage that expresses how much of the total damages recovered can reasonably be characterized as the recovery of medical expenses—those expenses typically being but one component of presumably several used in calculating the full value of damages suffered. On the one hand, the ALJ's "default formula" for calculating this "share of [the] recovery" belonging to AHCA is the one set out in paragraph (11)(f) (as detailed above, effectively 37.5 percent of the settlement proceeds). *Gray v. Ag. for Health Care Admin.*, 288 So. 3d 95, 97–98 (Fla. 1st DCA 2019); *see* § 409.910(11)(f), Fla. Stat. (referring to "the amount recovered" being "distributed" according to a percentage of the recovery being paid to AHCA and the "remaining amount" being paid to the beneficiary). On the other hand—again, if we zero in on a ratio

5

comparing the magnitude of the part to the magnitude of the whole—"the *portion* of the *total* recovery" to be "allocated as past and future medical expenses" will be represented as a smaller ratio than that established by paragraph (11)(f), provided there is "clear and convincing evidence" supporting that determination. § 409.910(17)(b), Fla. Stat. (emphases supplied). At all events, the ratio to be determined and used must be supported by competent evidence and express a relationship between the part and the whole—the ratio thereby remaining fixed, so if x-percent of the valuation of total damages can be proven to be medical expenses, x-percent of the settlement proceeds reasonably can be allocated to those expenses.

Generally speaking, "proportionality methodology" is not novel, and in a different context, the supreme court has approved it as an evidentiary approach to demonstrate "apportion[ing] settlement proceeds between economic and noneconomic damages for purposes of calculating a nonsettling defendant's obligation." *Wells v. Tallahassee Mem'l Reg'l Med. Ctr., Inc.*, 659 So. 2d 249, 253–54 (Fla. 1995) (holding that "the allocation [should be] based upon the jury verdict," so "divided between economic and noneconomic damages in the same proportion as the jury's award"); *see id.* at 254 (explaining that because "the economic damages comprised 35.349% of the total award," applying that percentage "to the total of the settlements results in the determination that $106,047 of the $300,000 should be allocated to economic damages"). The statute in fact calls for the beneficiary to present evidence to overcome the statutory presumption, and it anticipates some "pro*portion*ality methodology," given that it addresses determining a "portion" of the total settlement amount allocable to medical expenses. As the highlighting shows, the statutory term *literally* appears in the methodology's moniker.

To get out from under the statutorily presumptive ratio, Palacios bore the burden of proving, by clear and convincing evidence, not just the valuation of the total damages he claimed to have suffered, but also each component of that total valuation. *See Giraldo*, 248 So. 3d at 56; *Eady v. State*, 279 So. 3d 1249, 1259 (Fla. 1st DCA 2019); *Mojica by & through Mojica v. Ag. for Health Care Admin.*, 285 So. 3d 393, 398 (Fla. 1st DCA 2019); *but cf. Gray*, 288 So. 3d at 99 (explaining that the beneficiary's submission of only

6

"the verdict form, the final judgment, and letters providing the amount of the liens imposed" failed to present evidence showing that his settlement "was allocated in any way between different categories of damages, costs, or attorney's fees"). In reliance on the supreme court's acceptance of a similar proration approach in the context found here, this court did not reject "applying the same ratio the settlement bore to the total value of the damages to the" amount claimed as recoverable medical expenses to find "a reasonable and conservative allocation of" the settlement proceeds toward an AHCA lien. *Mojica*, 285 So. 3d at 395–96, 398 (citing *Giraldo*, 248 So. 3d 53; and *Eady*, 279 So. 3d 1249).

The ALJ's final order in fact acknowledged the viability of the proportionality evidentiary methodology testified to by Palacios's experts, and the order set out a description of Palacios's evidence—which the ALJ seems to have accepted—standing in marked contrast to the dearth of evidence this court noted in *Gray*. Palacios called two witnesses who testified to both the total valuation and the value of its constituent parts—including the $125,000.00 for past and future medical expenses. The ALJ also noted AHCA presented no evidence "to persuasively contradict or rebut the . . . valuation of [Palacios's] case at $1,000,000"; "[n]or did AHCA convincingly assail [the experts'] opinions regarding" that total valuation.[2]

---

[2] The concurring opinion makes a reasonable observation that using case-valuation testimony of the type used by Palacios certainly *seems* highly speculative. As just mentioned, both supreme courts and this court have held that the mode of proof—such as it is—used by Palacios is not *so* speculative that it could be deemed incompetent evidence as a matter of law when it otherwise goes substantively uncontested as speculative by AHCA—through expert-qualification voir dire, cross-examination, or rebuttal testimony. *See Eady*, 279 So. 3d at 1259 (disallowing wholesale rejection of evidence "on the basis that the pro rata formula was speculative," at least where the beneficiary "presented expert testimony directed towards the appropriate share of the settlement funds to be allocated to past medical expenses" and "AHCA did not present any evidence to refute the experts' opinions"); *Mojica*, 285 So. 3d at 395, 399 (holding that the ALJ

This testimony—admitted into evidence uncontested and unrebutted—should have resolved the matter in Palacios's favor. *See Giraldo*, 248 So. 3d at 56 ("Although a factfinder may reject uncontradicted testimony, there must be a reasonable basis in the evidence for the rejection." (internal quotations and citation omitted)); *see also id.* ("Here, Villa presented uncontradicted evidence establishing [only] $13,881.79 [of the $1 million settlement was] the settlement portion properly allocated to his past medical expenses, and there is no reasonable basis in this record to reject Villa's evidence. For this reason, no further factfinding is required."; directing that award of AHCA lien be reduced to that amount); *Eady*, 279 So. 3d at 1259 (following *Giraldo* and directing ALJ to reduce AHCA lien award to reflect beneficiary's unrefuted "expert testimony directed towards the appropriate share of the settlement funds to be allocated to past medical expenses," because "there was no competent, substantial

---

had no legal basis for rejecting valuation opinion testimony when that testimony went "unrebutted and unimpeached" with regard to "the full value of [the beneficiary's] damages"); *cf. Wos*, 568 U.S. at 640–41 (acknowledging difficulty in determining "a fair allocation of such a settlement [across different claims]" but noting that "[t]rial judges and trial lawyers [] can find objective benchmarks to make projections of the damages the plaintiff likely *could have proved* had the case gone to trial," depending on both the likelihood of prevailing at trial and the amount of "*damages awarded in comparable tort cases*" (emphases supplied)); *Giraldo*, 248 So. 3d at 54, 56 (finding "uncontested expert testimony establishing that only $13,881.79 of the $1 million tort recovery represented compensation for [the beneficiary's] past medical expenses" to be sufficient evidence and there was no "reasonable basis" to reject it).

AHCA did not present any evidence at all in rebuttal and does not contend by cross-appeal that the ALJ's reliance on the opinion testimony offered by Palacios was erroneous because it was speculative. We in turn have no occasion to address the possibly speculative nature of Palacios's mode of proof. Instead, we take the record and the ALJ's order as we find them and address only the legal question regarding the ALJ's use of comparative negligence.

8

evidence to support the ALJ's" rejection of the proven allocation and "no reasonable basis in the record" to conclude the beneficiary "failed to prove his case"); *Mojica*, 285 So. 3d at 398 (same). For the ALJ, though, it did not.

While the ALJ's final order acknowledged the proven proportion of medical expenses ($125,000.00) to the total value of the claim ($1,000,000.00), it went on to apply an entirely different ratio—a comparison of the *total* settlement proceeds to what the *total* recovery would have been following a jury verdict had the case gone to trial—the ALJ's order then concluding that because the ratio was greater than one (over 100 percent), AHCA was entitled to recover all the medical assistance it had paid. This ratio did not express a relationship between the various distinct components of Palacios's damages—which had been *proven*—and the whole of his established damages (also proven), so it carried no relevance to the ALJ's task at hand: calculate what portion of the settlement proceeds fairly can be attributed to medical expenses. Palacios's success in settling his suit, compared with what he would have recovered at trial, is not a proper consideration.[3] But even if comparative negligence were a factor to be considered, the 80-percent discount would have to apply to each component of Palacios's damages as well as the total damages—effectively multiplying the ratio between these two numbers by one, resulting in no net effect on the ratio that matters.

---

[3] As mentioned earlier, the record does not contain a transcript of the evidentiary hearing, but this is not a sufficiency-of-the-evidence appeal. AHCA at no point along the way objected to or otherwise opposed admission of Palacios's expert testimony as speculative—which, as the concurring opinion explains, very well may be the case. Because AHCA does not cross-appeal the order, we take as given the ALJ's findings of fact, including his acceptance of the "proven" proportion of medical expenses to the total value of the claim. Here, we are addressing only whether there is legal support for the ALJ's comparative-negligence adjustment.

9

B

Take the ratio of the settlement amount to the amount Palacios proved as his total damages (both economic and non-economic), reduced to present value, as this court did in cases like *Eady* and *Mojica* (each, in turn, following the supreme court in *Giraldo*):

$$\frac{238,500}{1,000,000} = \frac{477}{2,000} = 23.85\%$$

As Palacios's unchallenged evidence purported to prove, the total value of his damages ($1,000,000.00) was the sum of various economic and non-economic components, including $125,000.00 in medical expenses. The settlement amount, then, represented a compromise down of each of Palacios's constituent claims for damages to 23.85 percent of the total, or $0.2385 on the dollar. According to the proportionality methodology already discussed, Palacios reasonably could be said to have settled his claim of $125,000.00 in medical expenses for $29,812.50 (*i.e.*, $125,000 x 0.2385).

Another way to consider this calculation is to look at the ratio of Palacios's claimed medical expenses (one component of his economic damages) to his total claimed damages (both economic and non-economic), shown as follows:

$$\frac{125,000}{1,000,000} = \frac{1}{8} = 12.5\%$$

That means, according to the unrefuted evidence, the ratio of the amount allocated for medical expenses to the whole amount of damages should be 1 to 8; or, to put it another way, the total medical expenses made up 12.5 percent of the total value of his claim.

Implicit in proportionality methodology—when the constituent parts of the total damages are proven by clear and convincing evidence—is the premise that a fair allocation of otherwise unallocated settlement proceeds is intended to compensate a portion of each of those established constituent parts. And unless otherwise indicated, the only reasonable way to

10

figure out what those portions are is to maintain the ratio of each component to the whole. After all, "allocate" in this space means to apportion a whole based on a formula or ratio, or divide out a whole into proportional parts.

The ALJ, upon determining that Palacios had proven both his medical expenses and his total damages, simply could have used the following algebraic equation to calculate how much of the settlement proceeds should be allocated to the medical expenses to maintain the ratio:

$$\frac{125{,}000}{1{,}000{,}000} = \frac{1}{8} = \frac{y}{238{,}500}$$

We solve for y as follows:

$$8y = 238{,}500$$

$$y = \frac{238{,}500}{8} = 29{,}812.50$$

Once again, the amount of the settlement fairly allocable to medical expenses is $29,812.50. This makes sense. If Palacios's medical expenses made up one-eighth of his total claim—and taking this is as proven, which we must do in this appeal—they also should be allocated as one-eighth of the settlement amount.

In both approaches, all that is really happening mathematically is application of the multiplicative identity property of one (*i.e.*, multiply any number by one and you get the number you started with) to convert the medical-expenses-total-damages ratio into an expression useful for allocation of the settlement proceeds—without changing the ratio. To put it another way, because dividing a number (other than zero) by itself has the quotient of one, we can multiply both the numerator and the denominator of a ratio (read: fraction) by the same number (so effectively, one) without changing the ratio, *i.e.*, the relationship that ratio expresses. This has the effect of converting the ratio to express the same relationship in different terms.

So, if $\frac{125{,}000}{1{,}000{,}000}$ represents the ratio of the part attributable to total medical expenses over the total amount of all claimed

damages, we can apply the percentage of the total damages Palacios settled for to both the top and bottom, thereby maintaining the ratio while expressing the ratio in terms of the part attributable to the *compromised* amount of medical expenses over the *compromised* amount of all claimed damages:

$$\frac{125,000}{1,000,000} \times \frac{.2385}{.2385} = \frac{29,812.50}{238,500.00}$$

The statute governing all this mentions nothing about using a comparative-negligence discount to alter this ratio or develop an entirely different—and inapplicable—ratio, like the ALJ sought to do in his order.[4] And why would it? Florida's comparative negligence statute requires that "contributory fault chargeable to the [plaintiff] diminish[] *proportionately* the amount awarded as *economic and noneconomic* damages for an injury attributable to the [plaintiff's] contributory fault." § 768.81(2), Fla. Stat. (emphases supplied); *cf. Hoffman v. Jones*, 280 So. 2d 431, 438 (Fla. 1973) (explaining that if both the plaintiff and the defendant are at fault, the plaintiff's recovery amount "may be only such *proportion* of the entire damages plaintiff sustained as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant" (emphasis supplied)); *Y.H. Invs., Inc. v. Godales*, 690 So. 2d 1273, 1277 (Fla. 1997) (explaining that section 768.81, Florida Statutes, is based on "considerations of fairness" and provides a "straightforward proposition" by which a plaintiff will have his "damages reduced only by [his] percentage of fault").

Notably, the jury finds only the amount of each type of damages for which the defendant is liable and the percentage of fault attributable to the plaintiff and the defendant; the trial court

---

[4] Our observing the statute's failure to mention a comparative negligence discount is merely to highlight the lack of a legal basis for the ALJ's rejection of the valuation that the order already determined had been conclusively proven. While the statute also does not reference Palacios's mode of proof, the former is a legal question, and the latter is an evidentiary question. AHCA was free to challenge this evidence with its own or to contest the ALJ's determination of the allocation on appeal; it has done neither.

reduces the amount of each form of damages as required by law to reflect the respective percentages of fault. *See* Fla. Std. Jury Instr. (Civil) § 501.4; Fla. Std. Jury Instr. (Civil), App. B (Form 1—Model Verdict Form). The reduction naturally applies not just to the total damages but to each constituent part of those damages. *Cf. Wells*, 659 So. 2d at 254 n.3 (providing a detailed description of calculations used to determine judgment amounts to account for set-offs, including apportioning settlement amount based on "percentage of jury's award allocated to economic damages," this percentage being determined by dividing economic damages by the "total jury award"); *see also id.* (applying fault percentages to determine how much a defendant is liable for, regardless of the proven damages, *not* to the apportionment of the settlement amount across different components of the total damages awarded).

And for the purpose of determining proportionality, those relative fault percentages mathematically, as it turns out, are of no moment. In reducing the total damages for which the defendant would have been liable to Palacios—assuming the jury would have determined the amounts of both economic and non-economic damages in its verdict—the trial judge would reduce each component, including medical expenses, by 80 percent as well. So, if the jury found that Palacios's total damages were $1,000,000.00, and his medical expenses were $125,000.00; and if it also determined he was 80 percent responsible for his own injuries; the judge would have had to reduce the total damages by 80 percent, including the $125,000.00. That means the judge would have reduced Palacios's award for medical expenses to $25,000.00, and the total award of $1 million to $200,000.00. The ratio of $25,000.00 to $200,000.00 of course brings us back to that 1 to 8 ratio discussed above. Once again, if we apply $\frac{0.2}{0.2}$ (the equivalent of one) to our original ratio, we of course get the same ratio. The comparative negligence percentage has no real effect in the determination here, and the ALJ erred in using it as a factor to alter the proven relationship between Palacios's medical expenses and his total damages.

\* \* \*

The only question Palacios had to answer—through conclusive evidence—is how much in medical expenses, as a proportion of his total damages, he could have proven at trial; this so the ALJ could assess, simply, whether the ratio of "past and future medical expenses" that have been proven to the total amount of settlement proceeds paid to the beneficiary is less than $\frac{37.5}{100}$ (or, \$37.50 out of every \$100.00 of settlement proceeds allocated to medical expenses). *Cf. Wos*, 568 U.S. at 640–41. The uncontroverted, admitted evidence showed that the ratio indeed was less than the statutory ratio. Yet the ALJ refused to award AHCA the lower lien amount (\$29,812.50) because Palacios's settlement exceeded an amount by which the trial judge would have remitted the jury verdict to comport with the comparative-negligence apportionment requirement of section 768.81. This refusal did not run contrary to any statutory mandate; but the order's conclusion drawn from the facts—which it indicated had been conclusively proven—defies mathematical logic. There not being a reasonable basis for rejecting Palacios's uncontested evidence in support of a lower lien, then, we must set the ALJ's final order aside. *See* § 120.68(7)(c), (d), Fla. Stat.[5] On remand, we instruct the ALJ to render an order awarding AHCA a lien on Palacios's settlement in the amount of \$29,812.50. *See* § 120.68(6)(a), Fla. Stat.

SET ASIDE; REMAND with instructions.

ROBERTS, J., concurs; LONG, J., concurs in result only with opinion.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

[5] These lien proceedings are under chapter 120, Florida Statutes. *See* § 409.910(17)(b), Fla. Stat. So section 120.68, Florida Statutes, controls our consideration of this appeal.

LONG, J., concurring in result only.

I concur that the ALJ erred in considering comparative negligence as a factor for determining how much of the total recovery should have been allocated as past and future medical expenses.  And I concur that we are bound by our prior decisions to permit the "proportionality methodology."  *See Eady v. State*, 279 So. 3d 1249 (Fla. 1st DCA 2019).  I write separately to note that the methodology, as generally employed, is speculative and inadequate to meet the burden under the statute.  We should revisit *Eady*.

"Medicaid is intended to be the payor of last resort."  *Gray v. Agency for Health Care Admin.*, 288 So. 3d 95, 97 (Fla. 1st DCA 2019).  The statute is designed to prevent a plaintiff from being unjustly enriched by recovering for medical damages that the plaintiff did not actually bear.  While the damages are real, the plaintiff did not pay them.  Instead, Medicaid (i.e., the taxpayer) is made to foot the bill.  Where a plaintiff recovers for medical damages that have been paid by Medicaid, the Agency for Health Care Administration ("AHCA") must "seek reimbursement" from the recovery.  § 409.910(4), Fla. Stat.  The reimbursement calculation (i.e. the statutory lien amount) is set out in the statute.  It is rather simple: "After attorney's fees and taxable costs [], one-half of the remaining recovery shall be paid to [AHCA] up to the total amount of medical assistance provided by Medicaid."  § 409.910(11)(f)1., 2., Fla. Stat.  The statute says nothing about a "proportionality methodology."

A plaintiff, however, may challenge the statutory lien amount by proving, with clear and convincing evidence, "that the portion of the total recovery which should be allocated as past and future medical expenses is less than the amount calculated by the agency pursuant to the formula."  § 409.910(17)(b), Fla. Stat.  The point of this provision is to ensure the lien is only applied to funds recovered for medical care.  *See Ark. Dep't of Health & Hum. Servs. v. Ahlborn,* 547 U.S. 268, 272 (2006) (holding that a Medicaid lien can only attach to funds recovered for medical expenses, and not to funds recovered for other types of damages).  The statute, therefore, sets out a presumptive allocation that can be challenged with clear and convincing evidence.

15

Demonstrating an alternative allocation of settlement funds can be done, as it was in *Ahlborn*, through a stipulation within the litigation. *Id.* at 280. It might also be done by agreement at the time of settlement with the tortfeasor. *Id.* at 288 (noting methods to reduce "[t]he risk that parties to a tort suit will allocate away the State's interest."). The proportionality methodology, however, takes a different approach. Rather than evidence of the actual settlement allocation, it begins by projecting a theoretical total-case-damages amount. This figure is presented non-adversarially, without any input from the defendant, and may be totally unrelated to the actual settlement. It then projects a total-medical-damages amount—another figure proposed by the plaintiff that is unrelated to the real settlement. It then determines what portion of the projected total-case-damages is derived from the projected total-medical-damages. That allocation is then arbitrarily imposed, without any other evidence, onto the actual settlement amount.

But all of this is just evidence that a plaintiff thinks his case is worth more than he agreed to settle it for. And that is insufficient to challenge the statutory lien amount. Even assuming a plaintiff can credibly demonstrate damages in excess of the settlement, that fact alone cannot show which parts of the total-case-damages were actually recovered by the settlement. Nor can it show the amounts in which those parts were recovered. A defendant might reasonably settle a case only for the hard medical damages and entirely discount the plaintiff's claimed non-economic damages. The proportionality method does nothing to address this uncertainty. But the uncertainty reflects the only question—i.e. what the actual settlement allocation was—that is relevant to challenging the statutory lien.

The statute creates a presumption in favor of the lien formula. To escape it, the plaintiff must present *clear and convincing evidence* of the actual settlement allocation. Absent such evidence, the proportionality methodology is entirely speculative and therefore legally insufficient to meet the burden. No amount of expert testimony about projected total-case-damages can rescue this speculative evidence. The proportionality method fails to tether the actual settlement allocation to the projected total-case-

16

damages allocation. Instead, the method presumes that the settlement allocation is the same as the projected total-case-damages allocation. But this replaces the law's statutory lien presumption with a new presumption in favor of an allocation based on projected total-case-damages.

There is no dispute here that Medicaid paid $35,031.49 in medical expenses for the plaintiff. It is a hard number. It is not the product of an exercise in judgment. It requires no balancing of interests or proportionality decisions. And it does not require witnesses to speculate on theoretical damages. The $35,031.49 lien is the actual medical expense paid by Medicaid and it is less than one-half of the settlement recovery after fees and costs. This should end the analysis. Absent clear and convincing evidence that demonstrates the medical expense recovery was *in fact* less than the statutory lien amount, the law requires the repayment of the full amount footed by Medicaid. Rather than a simple calculation that repays the taxpayers' generosity (while ensuring the plaintiff keeps at least half), the proportionality method creates a murky recovery scheme ripe for gamesmanship. And it ultimately swallows the intent of the statute.

The majority correctly notes that the governing statute mentions nothing about using a comparative-negligence discount to alter the statutory lien amount. But neither does it mention the proportionality methodology.[*] The bottom line is that the proportionality methodology is speculative, and it impermissibly shifts the presumption away from the statutory lien formula. To avoid a lien amount determined by the simple formula in the statute, a plaintiff must "demonstrat[e], with evidence, that the lien amount exceeds the amount recovered for medical expenses." *Smith v. Agency for Health Care Admin.*, 24 So. 3d 590, 592 (Fla. 5th DCA 2009). We should return to a straightforward application of the statute.

---

[*] Unlike the proportionality methodology, the comparative-negligence discount at least finds support in substantive Florida law. *See* § 768.81(2), Fla. Stat. (Florida's comparative fault statute requires a claimant's own negligence to proportionately diminish the damages awarded).

17

_____

Marc R. Ginsberg of Mandina & Ginsberg, PLLC, Miami Lakes, for Appellant.

Alexander R. Boler, Agency for Health Care Administration, Tallahassee, for Appellee.